Filed at _____ 4:36 P M
_____ 11/29, 20 11
_____
Deputy Clerk, U.S. District Court
Middle District of Georgia

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO: 3:11-CR-58-CAR |
| | : | |
| v. | : | VIOLATION: |
| | : | 18 U.S.C. § 371 |
| WESLEY JOSEPH WINGO, | : | (i/c/w 666, 1341, 1343, |
| a/k/a JOE WINGO, PASTOR JOE, and PJ; | : | 1349, 2314 and 1512) |
| ANDREW WINGO, | : | 18 U.S.C. § 666 |
| a/k/a ANDY WINGO; | : | 18 U.S.C. § 1343 |
| LINDA WINGO, | : | 18 U.S.C. § 1349 |
| a/k/a PASTOR LINDA; and | : | 18 U.S.C. § 1956 |
| HARRY MICHAELS | : | (i/c/w 1956(a) and 1957 |
| | : | 18 U.S.C. § 1957 |
| | : | 18 U.S.C. § 2314 |
| | : | 18 U.S.C. § 1512 |

The Grand Jury charges:

**General Introduction**

At all times material to this Indictment:

**Angel Food Ministries**

1.      Angel Food Ministries (AFM) is a Georgia non-profit organization with a 501(c) tax exemption from the Internal Revenue Service. AFM was primarily a food assistance program. AFM purchased food in bulk at discount prices. The food was then sold to individuals and families through a network of churches also known as host sites. While the stated purpose of AFM was to sell food at reduced prices to the needy, AFM, in fact, sold food to anyone.

2.      AFM was governed by a Board of Directors, which consisted of Wesley Joseph Wingo, aka Joe Wingo, aka Pastor Joe, and aka PJ (hereinafter "Joe Wingo,") and his family

1

members including, his wife, Linda Wingo aka Pastor Linda, (hereinafter "Linda Wingo"), their sons, Andrew Wingo aka Andy Wingo, (hereinafter "Andy Wingo") and J. W. W. aka W. W., (hereinafter "W. W."), along with other non-family members who were selected by Joe Wingo.

Joe Wingo was a member of the Board of Directors and the Chief Executive Officer (CEO) of AFM. At various times, Andy Wingo held leadership roles such as a Board of Directors Member, Chief Operating Officer (COO), and head of the procurement office. Linda Wingo also at various times held leadership roles at AFM and related entities, such as Board of Directors Member, and head of the administrative division of AFM.

Harry Michaels was employed by AFM in the food procurement department.

3.  AFM was required by virtue of its tax-exempt status to file an Annual Information Return, IRS Form 990. The purpose of the IRS Form 990 filing is to provide information on the organization's mission, programs, and finances. The IRS Form 990 provides that, in pertinent part, upon filing the information is available for public inspection and, for some people, serves as the primary or sole source of information about the organization. Organizations exempt from income tax under Section 501(c)(3) of the Internal Revenue Code are prohibited from directly or indirectly engaging in political campaign activities. Exempt organizations are permitted to engage in certain lobbying activities to influence legislation and legislators, but are required to disclose those activities on the IRS Form 990. Exempt organizations are required to list the compensation paid to officers and the five highest paid employees on the IRS Form 990. Exempt organizations are also required to disclose any payments to affiliates. Exempt organizations are also required to disclose the family and business relationship between the directors, trustees, and key employees.

4.     AFM is headquartered in Walton County, Georgia, which is in the Athens Division of the Middle District of Georgia.

5.     Until November 2007, Andy Wingo was the head of the food procurement office for AFM and was compensated by AFM. Andy Wingo, along with Harry Michaels and other AFM employees, contacted food vendors and negotiated food purchases on behalf of AFM.

6.     AFM purchased food through various companies, including but not limited to: J&W Foods; Good Source, Inc.; Kingery & Associates, Inc.; Fresh Frozen Foods, LLC; Agri-Best Holding, LLC (dba Protein Solutions, LLC); Empire Beef of Pennsylvania; Tyson Foods; Perdue Farms, Inc.; Psalm One Developments, LP; and Poultry Plus, LLC.

7.     AFM also used Signature Custom Packing, LLC (dba Signature Foods, LLC), located in Pendergrass, Georgia, to repackage large bulk shipments into smaller sizes to be used by AFM. The two names are used interchangeably.

8.     On or about October 26, 2005, AFM received a community facilities direct loan from the United States Department of Agriculture (USDA) for the purpose of purchasing and renovating a warehouse distribution facility at 690 Unisia Drive, Monroe, Georgia. The loan was for $6,970,776.00 with a 4.25% interest rate for 25 years. AFM executed a Deed to Secure Debt, a promissory note, and a security agreement/financing statement securing all real estate, equipment, fixtures, furniture and revenue to the USDA.

9.     On or about September 26, 2006, AFM was awarded a USDA Food and Nutrition grant in the amount of $999,925.00, which was paid in installments. The first installment of $25,000 was paid to AFM on December 12, 2006. In 2008, AFM received $166,000.00 from USDA under this grant. Payments continued through January 2010.

**Emmanuel Praise Church, Inc.**

10.     In 1994, Joe Wingo, along with Linda Wingo, also established Emmanuel Praise Church, Inc. (hereinafter "EPC") which was later housed in the AFM warehouse auditorium at 690 Unisia Drive, Monroe, Georgia. EPC is also a 501(c) tax-exempt corporation. Joe Wingo, Linda Wingo, and Andy Wingo were listed as pastors at EPC. Employees of AFM and EPC were required to attend services at EPC as a condition of ongoing employment. Records were kept in order to ensure that employees attended. Also, employees were strongly encouraged to contribute money to EPC. AFM regularly transferred substantial sums of money to fund EPC's operation, which included the EPC payroll and the housing allowances for Joe and Linda Wingo.

**Good Hope Food Company, Inc.**

11.     Joe Wingo, his wife, Linda Wingo, his sons, Andy Wingo and W. W. established Good Hope Food Company, Inc. (hereinafter "Good Hope Food Company"), in January 1996. Good Hope Food Company was a "for profit" business. On October 24, 2007, the 2007 Corporation Annual Registration filed with the Office of Secretary of State for the State of Georgia, no longer listed Joe Wingo as an officer of this corporation. Andy Wingo was named as CFO, Secretary, and Agent of Good Hope Food Company. Good Hope Food Company was used as a mechanism to transfer monies from AFM and vendors of AFM to the Defendant(s) and for the private benefit of the Defendant(s).

**LINJOE, LLC**

12.     LINJOE, LLC is a limited liability corporation created in 2006 and solely owned by Joe Wingo and his wife, Linda Wingo. The purpose of LINJOE, LLC was to purchase real estate in order to generate rental income. At times, LINJOE, LLC obtained the down payment

4

from AFM to purchase real estate. At various times, AFM employees lived in homes owned by LINJOE, LLC. AFM then collected rent from these employees by payroll deductions and paid these amounts to LINJOE, LLC.

**Thousand Hills Cattle Company, Inc.**

13.     Joe Wingo, his wife Linda Wingo, and others, incorporated Thousand Hills Cattle Company, Inc. (hereinafter "Thousand Hills Cattle Company"), in 1994 as a "for profit" company in the State of Georgia. Thousand Hills Cattle Company was used as a mechanism to transfer monies out of AFM to the Defendant(s) and for the private benefit of the Defendant(s).

**North Carolina Aviation Leasing, LLC**

14.     Joe Wingo, Linda Wingo, and Andy Wingo opened a bank account on behalf of North Carolina Aviation Leasing, LLC (hereinafter "North Carolina Aviation Leasing"), in order to acquire a Beechjet 400A aircraft, which was then leased back to AFM. Joe Wingo and Linda Wingo obtained the down payment for the jet aircraft from AFM funds.

**J&W Foods, LLC**

15.     J&W Foods, LLC, (hereinafter "J&W Foods"), is a food brokerage business incorporated, located, and operating in the State of Alabama. J&W Foods is owned by William (Bill) Askins, who operated the business with his son. J&W Foods was dependent on AFM for the vast majority of its business.

16.     Beginning in October 2007, and continuing until the time of this Indictment, a federal criminal investigation led by the FBI and IRS commenced in the Middle District of Georgia concerning fraudulent activities relating to AFM and other entities operated by the Defendant(s).

17.     The dollar amounts in the conspiracy are all approximate amounts.

## COUNT ONE
## 18 USC 371
## Conspiracy

**THE CONSPIRACY AND ITS OBJECTS**

Beginning on or about January 1, 2003, and continuing until on or about the date of this Indictment, the exact dates unknown to the Grand Jury, in the Athens Division of the Middle District of Georgia, and elsewhere within the jurisdiction of this Court, the Defendant(s),

## JOE WINGO,
## ANDY WINGO,
## LINDA WINGO, and
## HARRY MICHAELS,

did knowingly combine, conspire, confederate, and agree with each other and with others both known and unknown to the Grand Jury to commit offenses against the United States, and to defraud the United States and its agencies, that is:

1.      Wire Fraud, in violation of Title 18, United States Code, Section 1343;

2.      Mail Fraud, in violation of Title 18, United States Code, Section 1341;

3.      Attempt to Commit Fraud, in violation of Title 18, United States Code, Section 1349;

4.      Theft from an Organization Receiving Federal Funds, in violation of Title 18, United States Code, Sections 666 and 2;

5.      Interstate Transportation of Stolen Property, in violation of Title 18, United States Code, Sections 2314 and 2 and;

6.      Tampering with a Witness, in violation of Title 18, United States Code, Section

6

1512 and 2.

It was further the object of this conspiracy for the Defendant(s) to use AFM as a mechanism to generate and transfer money and assets to the Defendant(s) and for the private benefit of the Defendant(s), thereby defrauding AFM and the United States of America.

**MANNER AND MEANS OF THE CONSPIRACY:**

1. Beginning on or about January 1, 2003, the Defendant(s), without the prior approval of the Board of Directors of AFM, utilized AFM bank accounts for their own personal benefit.

2. The Defendant(s) would further utilize the AFM general account, without the prior approval of the Board of Directors of AFM, to transfer funds to Thousand Hills Cattle Company, owned and operated by the Wingo family. Then, Thousand Hills Cattle Company checks were issued to the various Wingo family members and also to certain AFM employees. These checks purported to be bonus checks for work done at AFM.

3. The Defendant(s) would further utilize AFM funds to make down payments on real estate purchased by Joe Wingo, Linda Wingo, and LINJOE, LLC, which were subsequently rented and sold. Joe Wingo, Linda Wingo, and LINJOE, LLC would retain any proceeds from the rental or sale of these properties.

4. The Defendant(s) would routinely use the AFM credit cards issued to them in their corporate capacities for the purchase of personal items and then cause AFM to pay the bills. Further, the Defendant(s) would have AFM pay for the purchase of personal assets such as classic cars, jewelry, clothing, firearms, and other personal expenses.

5. The Defendant(s) used AFM funds to make the down payment on a jet aircraft

7

purchased by the Defendant(s) and held in the name of North Carolina Aviation Leasing, held by Joe Wingo, Linda Wingo, and Andy Wingo.

6.      The Defendant(s), without the prior approval of the Board of Directors of AFM, would cause AFM to issue bonuses to the Wingo family members. In addition, the Defendant(s) directed AFM to set aside funds to pay the anticipated withholding tax liability for the individual bonuses. The bonuses were made to disguise the fact that the Wingo family members had used unauthorized funds from AFM to pay for personal expenses and for the accumulation of personal assets. These bonuses were paid without the prior approval or knowledge of the Board of Directors of AFM.

7.      Beginning on or about January 1, 2003, and continuing until on or about December 31, 2009, Andy Wingo and Harry Michaels, with the knowledge and assistance of Joe Wingo, solicited various vendors who sold food to AFM to pay kickbacks to the Defendant(s) as a condition of continuing to do business with AFM.

8.      The vendors, at the direction of Andy Wingo and Harry Michaels, would then, in turn, increase the amount of their invoices to AFM in order to cover the amounts that the vendors had paid in kickbacks. The vendors would deliver the inflated invoices to AFM in person, by fax, or by mail.  AFM would pay the inflated invoices by check or wire transfer.  Thus, the Defendant(s) caused AFM to fund the kickbacks by directing AFM to pay the inflated invoices knowing that the kickbacks had been already paid or would be paid in the near future.

9.      The Defendant(s) would also sell excess inventory owned by AFM and have the proceeds diverted to their personal use directly, and by having payments made to Good Hope Food Company without the prior approval of the Board of Directors of AFM.

8

10.     The Defendant(s) would solicit one of AFM's vendors, J&W Foods, to pay AFM's invoices within a set period of time to permit J&W Foods to secure an early payment discount offered by other vendors.  J&W Foods, after paying the full amount of the AFM invoices, less the early payment discount from the other vendors, would then re-bill AFM for the entire amount of the original invoices, plus J&W Foods' three cents/lb handling fee. J&W Foods would then pay the amount gained from the early payment discount to the Defendant(s) as a kickback. Thus, to fund the kickback, the Defendant(s) caused AFM to pay the full amount of the original invoice plus the handling fee charged by J&W Foods without the prior approval of the Board of Directors of AFM.

11.     The Defendant(s) would solicit J&W Foods to pay AFM's invoices from other vendors, claiming that AFM did not have sufficient funds on hand to make the payments. The Defendant(s) would instruct J&W Foods, to bill AFM for the full amount of the invoices, plus an additional amount which was described by the Defendant(s) as a "bump-up." The Defendant(s) would instruct J&W Foods to retain 60% of the "bump-up" amount and to pay 40% of the "bump-up" amount to Good Hope Food Company. Thus, to fund the kickbacks, the Defendant(s) caused AFM to pay the full amount of the original invoices, plus the "bump-up" amount charged by J&W Foods, only then to split the total "bump-up" amount between J&W Foods and Good Hope Food Company without the prior approval of the Board of Directors of AFM.

12.     The Defendant(s), in order to provide financial support to a political candidate, would give bonuses from AFM funds to AFM employees and then direct the AFM employees to make personal contributions to that political candidate in the amount of the bonuses.  The

9

Defendant(s) would also direct AFM employees to make contributions to support a political candidate and then reimburse the AFM employees in the form of a bonus without the prior approval of the Board of Directors of AFM.

13.     The Defendant(s), when filing the Annual Information Return, IRS Form 990, made false statements by failing to disclose relationships to other family members who were on the Board of Directors of AFM, by failing to disclose relationships to other exempt or nonexempt organizations, by failing to disclose compensation from other organizations, by failing to disclose political activities undertaken by AFM, and by failing to disclose payments to their various affiliates.

14.     The Defendant(s) would take actions to cover up their illegal activities when they learned they were under investigation.  Defendant Linda Wingo would attempt to persuade witnesses not to talk with law enforcement.  She would also advise them not to disclose truthful information to law enforcement.  Defendant Linda Wingo would advise witnesses to remove themselves from the local area in an effort to obstruct the federal agents' attempts to locate them. She would also assist in the removal of these witnesses. The Defendant(s) would destroy evidence in order to prevent seizure by the federal agents.

15.     The foregoing actions were taken for the purpose of removing money, assets, and resources from AFM and diverting them to and for the private gain and personal benefit of the Defendant(s) without the prior approval of the Board of Directors of AFM.

16.     The Defendant(s) and others utilized the bank accounts below for the purpose of removing money, assets, and resources from AFM and diverting them to and for the private gain and personal benefit of the Defendant(s) without the prior approval of the Board of Directors of

10

AFM:

| Entity | Bank | Account number |
|---|---|---|
| AFM | Regions Bank | xxx5442 |
| AFM | Athens First Bank & Trust | xxx0701 xxx6655 |
| AFM | Southern Community Bank | xxx7408 |
| AFM,USDA Supervised Bank Acct USDA, Rural Development | Regions Bank | xxx5914 |
| Thousand Hills Cattle Company | Athens First Bank & Trust | xxx6189 |
| Thousand Hills Cattle Company | Regions Bank | xxx5558 |
| Good Hope Food Company and Andy Wingo | Athens First Bank & Trust | xxx6322 |
| North Carolina Aviation Leasing | Mountain 1st Bank & Trust Bank | xxx3422 |
| LINJOE, LLC | Athens First Bank & Trust | xxx9710 |
| LINJOE, LLC/Linda Wingo/Joe Wingo | Athens First Bank & Trust | xxx7417 |
| J&W Foods | First Commercial Bank | xxx9370 |
| EPC | Athens First Bank & Trust | xxx6215 |
| Joe Wingo/Linda Wingo | Athens First Bank & Trust | xxx3052 |
| Andy Wingo/L. W. | Athens First Bank & Trust | xxx6750 |
| Andy Wingo/L. W. | Regions Bank | xxx8942 |

## OVERT ACTS OF CONSPIRACY:

The factual allegations contained in paragraphs one through seventeen above are incorporated here as if set forth in full.

The subsequent overt acts were taken for the purpose of removing money, assets, and resources from AFM and diverting them to and for the private gain and personal benefit of the Defendant(s) and in furtherance of the objects of the conspiracy:

11

**Thousand Hills Cattle Company Bonus Scheme**

1.     On or about December 11, 2004, AFM issued check # 10797 to Thousand Hills Cattle Company for $62,500, which was not for any services rendered to AFM. After depositing this amount into the Thousand Hills Cattle Company account, Joe Wingo then wrote check # 1167 to Linda Wingo in the amount of $15,000, check # 1168 to W. W. in the amount of $10,000, check #1169 to Andy Wingo in the amount of $10,000, and check # 1172 to Harry Michaels in the amount of $1000. All these checks were written from the same Thousand Hills Cattle Company account.

2.     On or about December 19, 2005, a credit transfer was made from AFM to the Thousand Hills Cattle Company account for $109,000, which was not for any services rendered to AFM. From this amount, Joe Wingo then wrote check #1026 to W. W. in the amount of $15,000, check #1027 to Andy Wingo in the amount of $15,000, check # 1037 to Harry Michaels in the amount of $1,500, check #1057 to Linda Wingo in the amount of $20,000, and check # 1075 to himself in the amount of $24,000. Other checks were also written to other AFM employees in lesser amounts. All these checks were written from the same Thousand Hills Cattle Company account.

**Bonus Scheme to negate Notes Receivable**

Beginning on or about December 1, 2004, and continuing to January 10, 2007, AFM provided corporate American Express credit cards to Joe Wingo, Andy Wingo, and Linda Wingo, who used the credit cards for personal expenses for the private gain and personal benefit of the Defendant(s) without the prior approval of the Board of Directors of AFM. Some of the personal expenses are outlined as Overt Acts below:

12

| Overt Act | Date | Card Holder | Merchant/Purchase | Amount |
|---|---|---|---|---|
| 3 | 12/11/2004 | Andy Wingo | Classic Pawn & Jewelry Jewelry store | $1,309.06 |
| 4 | 05/05/2005 | Andy Wingo | Europa Sports Sporting goods | $4,592.70 |
| 5 | 07/14/2005 | Linda Wingo | Mall of Georgia Web purchase | $1,504.86 |
| 6 | 08/03/2005 | Linda Wingo | Nordstrom Men's sportswear | $1,242.32 |
| 7 | 11/10/2005 | Linda Wingo | Nordstrom Men's sportswear | $1,551.50 |
| 8 | 11/16/2005 | Joe Wingo | Bennie's Shoes Shoe Store | $2,366.48 |
| 9 | 11/25/2005 | Linda Wingo | Ham Radio Outlet Electronics sale | $12,073.95 |
| 10 | 12/23/2005 | Joe Wingo | Bass Pro Shop | $1,674.74 |
| 11 | 02/06/2006 | Andy Wingo | Franklin's of Athens Sporting goods store | $2,536.44 |
| 12 | 02/08/2006 | Joe Wingo | Bailey Banks & Biddle Jewelry miscellaneous | $3,981.36 |
| 13 | 02/09/2006 | Joe Wingo | Spa Sydell Support Health & Beauty Spa | $1,034.50 |
| 14 | 02/28/2006 | Andy Wingo | Franklin's of Athens Sporting goods store | $2,800.19 |
| 15 | 04/08/2006 | Linda Wingo | Stone Mtn Square, Men's apparel | $1,520.94 |
| 16 | 04/13/2006 | Andy Wingo | Franklin's of Athens Sporting goods store | $645.19 |
| 17 | 04/15/2006 | Joe Wingo | Macy's, Fine jewelry | $3,774.96 |
| 18 | 04/19/2006 | Joe Wingo | Macy's, Fine jewelry | $1,711.57 |
| 19 | 04/22/2006 | Linda Wingo | Ann Taylor, Women's clothes | $1,291.68 |
| 20 | 11/04/2006 | Linda Wingo | Ann Taylor Women's apparel | $1,748.37 |
| 21 | 11/28/2006 | Linda Wingo | Ham Radio Outlet Household appliance | $11,490.34 |

Beginning on or about January 1, 2005, and continuing to January 10, 2007, Joe Wingo,

Linda Wingo, and Andy Wingo had signature authority on the AFM accounts and wrote checks

and made wire transfers for the private gain and personal benefits of the Defendant(s).

Some of those checks and wire transfers are outlined below as Overt Acts:

| Overt Act | Date | Payee | Amount | Signor | Purpose |
|---|---|---|---|---|---|
| 22 | 8/15/2005 | Joe Wingo | $65,000 | Joe Wingo | Classic car |
| 23 | 7/7/2006 | Mountain 1st | $280,000 | Wire transfer | Down payment on jet aircraft |
| 24 | 10/24/2006 | Attorney Trust Account | $136,612.70 | Wire transfer | Purchase of 800 Riverwood Drive, Monroe, Georgia |

25.     On or about November 10, 2006, AFM auditors notified Joe Wingo that the American Express cards could not be used for personal expenses unless those expenses were reported as taxable income for the Wingos. Joe Wingo signed a letter of compliance agreeing that personal expenses could no longer be placed on the AFM American Express cards and that the balances for personal expenses that were already on the AFM American Express Cards must be repaid.

26.     On or about December 29, 2006, without the prior approval of the Board of Directors of AFM, Joe Wingo devised a scheme to eliminate receivable loan balances that were created to reflect various financial transactions involving AFM funds that had been used for the private gains and personal benefit of Joe Wingo and Linda Wingo. Joe Wingo did so by issuing AFM checks to the Wingo family members and denoting those checks as "bonus wages" as follows:

14

| Overt Act | Check # | Payee | Amount | Amount plus tax | Pay Period |
|---|---|---|---|---|---|
| 27 | 12744 | Andy Wingo | $200,000.00 | $336,707.61 | 12/16/2006-12/29/2006 |
| 28 | 12745 | W. W. | $200,000.00 | $335,837.35 | 12/16/2006-12/29/2006 |
| 29 | 12746 | Linda Wingo | $200,000.00 | $336,973.24 | 12/16/2006-12/29/2006 |
| 30 | 12747 | L. M. W. | $200,000.00 | $352,493.00 | 12/16/2006-12/29/2006 |
| 31 | 12748 | Joe Wingo | $72,000.00 | $120,024.30 | 12/16/2006-12/29/2006 |
| Total | | | $872,000.00 | $1,482,035.50 | |

32.    On or about January 4, 2007, Joe Wingo required the other Wingo family members to issue checks back to AFM in the amount of the bonus they had just received in order to eliminate from the books and records of AFM unauthorized expenditures and loans taken by Joe Wingo and Linda Wingo.

33.    On or about January 4, 2007, AFM deposited the following checks from the various Wingo family members drawn on their personal accounts as follows:

| Overt Act | Check # | Bank Account | Payor | Amount |
|---|---|---|---|---|
| 34 | 5812 | Athens First Bank & Trust | Andy Wingo | $200,000.00 |
| 35 | 1628 | Athens First Bank & Trust | W. W. | $200,000.00 |
| 36 | 3368 | Athens First Bank & Trust | Linda Wingo | $200,000.00 |
| 37 | 145 | Regions Banks | L. M. W. | $200,000.00 |
| 38 | 3622 | Athens First Bank &Trust | Joe Wingo | $52,777.09 |
| Total | | | | $852,777.09 |

After the $852,777.09 was re-deposited into the AFM accounts, journal entries were made in the AFM bookkeeping system and one check was issued to EPC, all of which made it appear as though Joe Wingo and Linda Wingo had repaid AFM and EPC $852,777.09 for the following

15

unauthorized loans:

| Overt Act | Notes Receivable | Amount |
|---|---|---|
| 39 | Wingo Residence | $46,266.92 |
| 40 | Loan #10 (classic car) | $65,000.00 |
| 41 | Loan #11 (jet aircraft) | $280,000.00 |
| 42 | "J/W Social Circle" | $2,280.00 |
| 43 | Wesley Joseph Wingo | $174,072.08 |
| 44 | LINJOE, LLC, 102 Queens Ln, Good Hope, Georgia | $23,206.04 |
| 45 | LINJOE, LLC, 112 Queens Ln, Good Hope, Georgia | $1,609.15 |
| 46 | LINJOE, LLC, 203 Queens Ln, Good Hope, Georgia | $1,730.20 |
| 47 | LINJOE, LLC, 800 Riverwood Dr, Good Hope, Georgia | $136,612.70 |
| 48 | AFM Check to EPC for Joe Wingo loans | $122.000.00 |
| Total | | $ 852,777.09 |

**Vendor fraud scheme**

49.    On or about February 25, 2005, Andy Wingo instructed William (Bill) Askins, owner of J&W Foods, located in the State of Alabama, to make payments from J&W Foods to Andy Wingo's mother, Linda Wingo.  For a period of time, at the instruction of Andy Wingo, Askins continued to make payments to Linda Wingo.

50.    On or about March 25, 2005, and continuing through August 2007, Andy Wingo and Joe Wingo, with the assistance of Harry Michaels, would use J&W Foods for the purpose of removing money, assets and resources from AFM and for the private gain and personal benefit of the Defendant(s) without the prior approval of the Board of Directors of AFM.  These transactions routinely involved the use of facsimile, wire transfers, mailings, and other means to conduct business between the States of Georgia and Alabama.

51.    On or about March 25, 2005, and continuing through August 2007, Andy Wingo told Askins that AFM did not have the money on hand to pay Fresh Frozen Foods in order to

16

secure the early payment discount of 2%. Andy Wingo told Askins to make the payments to Fresh Frozen Foods on behalf of AFM and then to divert the 2% early payment discount to Andy Wingo. At the direction of Andy Wingo, Askins would bill AFM for the full amount of the invoice, plus add a handling fee for J&W Foods, of three cents/lb. The net result of these transactions was to get the 2% early discount into the hands of Andy Wingo, and the handling fee to Askins, all at the expense of AFM, which incurred an increased cost. In multiple instances, the 2% early discount and the handling fee would be disguised in invoices that would otherwise include actual food provided by J&W Foods to AFM in the normal course of business.

52.     On or about August 1, 2006, and continuing through March 2007, Andy Wingo told Askins that AFM did not have the money on hand to pay AFM invoices from Protein Solutions. Andy Wingo told Askins to have J&W Foods pay the invoices for AFM and add a "bump-up" amount to the prices in J&W Foods' subsequent invoices to AFM. These "bump-up" amounts would then be split between Andy Wingo and Askins. Askins would typically receive approximately 60% and Andy Wingo would typically receive approximately 40% of the total "bump-up" amount. In multiple instances, the "bump-up" amount would be disguised in invoices that would otherwise include actual food provided by J&W Foods to AFM in the normal course of business.

53.     Beginning on or about January 2, 2007, and continuing through on or about September 11, 2007, Andy Wingo told Askins to fabricate J&W Foods' invoices for fictitious transactions between J&W Foods and AFM for popcorn chicken and chicken tenders. The proceeds of these fictitious transactions were paid to Good Hope Food Company at the ultimate expense of AFM.

17

54.     On or about April 2007, Andy Wingo instructed Askins to pay Andy Wingo a kickback of $75,000 per month and told Askins to inflate J&W Foods' cost of goods sold to AFM to cover that cost. Those payments were to be made to Good Hope Food Company at the ultimate expense of AFM.

Below are specific overt acts which relate to transactions and various combinations of transactions between J&W Foods and AFM which were for the ultimate purpose of removing money, assets, and resources from AFM and for the private gain and personal benefit of the Defendant(s).

### Fresh Frozen Foods: May 3 to May 20, 2005

55.     On or about May 3, 2005, AFM sent Askins multiple Fresh Frozen Foods invoices totaling $71,540.82 for food sold to AFM by Fresh Frozen Foods.

56.     On or about May 3, 2005, J&W Foods issued check #1695 to Fresh Frozen Foods in the amount of $70,110.00 for payment in full of the foregoing  multiple Fresh Frozen Foods invoices, minus a 2% early payment discount of $1,430.82.

57.     On or about May 4, 2005, J&W Foods sent to AFM invoice #7264 in the amount of $1,349.91 for food actually sold to AFM by J&W Foods.

58.     On or about May 9, 2005, J&W Foods faxed to the attention of Andy Wingo and B. E. at AFM, a second invoice #7265 in the amount of $444,621.54.  This second invoice, #7265, was also, in part, for food actually sold to AFM by J&W Foods.  However, the second invoice, #7265, also included the following amounts: (i) $71,540.82 for the full amount of multiple Fresh Frozen Foods invoices; and (ii) $4,607.28, which represented J&W Foods' three cents/lb handling fee of $4,351.32 plus, in this instance, an additional amount of $255.96.

18

59.     On or about May 16, 2005, AFM paid J&W Foods check # 14638 in the amount of $445,971.45.     This payment was for J&W Foods invoices #7264 ($1,349.91) and #7265 ($444,621.54).

60.     On or about May 20, 2005, J&W Foods paid check #1716 in the amount of $1,430.00 to Andy Wingo, completing a series of transactions by which AFM paid the 2% early payment discount to Andy Wingo and a handling fee of $4,607.28 to Askins.

**Fresh Frozen Foods: June 30 to July 29, 2005**

61.     On or about June 30, 2005, AFM presented to J&W Foods multiple invoices from Fresh Frozen Foods totaling $64,363.60 for services previously rendered by Fresh Frozen Foods to AFM.

62.     On or about June 30, 2005, J&W Foods issued check #1750 to Fresh Frozen Foods in the amount of $63,076.33 for payment in full of the multiple Fresh Frozen Foods invoices, minus a 2% early payment discount of $1,287.27.

63.     On or about July 6, 2005, J&W Foods faxed to the attention of Andy Wingo, M. B., and B. E., at AFM, invoice #7270 in the amount of $342,875.96. This invoice was, in part, for food actually sold to AFM by J&W Foods. However, the invoice also included the following amounts: (i) $64,363.60 for the full amount of the multiple Fresh Frozen Foods invoices and (ii) $4,170.60, which represented J&W Foods' three cents/lb handling fee.

64.     On or about July 6, 2005, J&W Foods faxed to the attention of Andy Wingo, M. B., and B. E. at AFM, invoice #7271 in the amount of $9,721.30 for food actually sold to AFM by J&W Foods.

19

65.     On or about July 25, 2005, AFM paid J&W Foods check # 17021 in the amount of $352,597.26. This payment was for J&W Foods invoices #7270 ($342,875.96) and #7271 ($9,721.30).

66.     On or about July 29, 2005, J&W Foods issued check #1782 to Andy Wingo in the amount of $1,287.00, completing a series of transactions by which AFM paid the 2% discount to Andy Wingo and a handling fee of $4,170.60 to Askins.

**Fresh Frozen Foods: September 25 to October 26, 2005**

67.     On or about September 25, 2005, AFM presented to J&W Foods multiple invoices from Fresh Frozen Foods totaling $117,438.00 for services previously rendered by Fresh Frozen Foods to AFM.

68.     On or about September 25, 2005, J&W Foods issued check #1859 to Fresh Frozen Foods in the amount of $115,089.25 for payment in full of the multiple foregoing Fresh Frozen Foods invoices, minus a 2% early payment discount of $2,348.75.

69.     On or about October 11, 2005, J&W Foods sent to AFM invoice #7277 for $631,735.92. This invoice, #7277, was, in part, for food actually sold to AFM by J&W Foods. However, invoice #7277, also included the following amounts: (i) $117,438.00 for the full amount of multiple Fresh Frozen Foods invoices; and (ii) $6,480.00, which represented J&W Foods' three cents/lb handling fee.

70.     On or about October 11, 2005, J&W Foods sent to AFM invoice #7278 in the amount of $10,911.24 for food actually sold to AFM by J&W Foods.

71.     On or about October 25, 2005, AFM paid to J&W Foods check #20897 in the amount of $642,647.16. This payment was for J&W Foods' invoices #7277 ($631,735.92) and

#7278 ($10,911.24).

72.     On or about October 26, 2005, J&W Foods issued check #1886 in the amount of $2,348.77 to Andy Wingo, completing a series of transactions by which AFM paid the 2% discount to Andy Wingo and a handling fee of $6,480.00 to Askins.

**Fresh Frozen Foods:  November 3 to November 18, 2005**

73.     On or about November 3, 2005, AFM sent to Askins multiple Fresh Frozen Foods invoices totaling $111,812.56 for services previously rendered by Fresh Frozen Foods to AFM.

74.     On or about November 3, 2005, J&W Foods issued  check #1896 to Fresh Frozen Foods in the amount of $78,568.84 and, on or about November 7, 2005, check #1901 in the amount of $31,007.47, for a total of $109,576.31 for payment in full of the foregoing Fresh Frozen Foods invoices, minus a 2% early payment discount of $2,236.25.

75.     On or about November 9, 2005, J&W Foods sent to AFM invoice #AFM-10-05-C in the amount of $21,625.56 for food actually sold to AFM by J&W Foods.

76.     On or about November 9, 2005, J&W Foods faxed to the attention of Andy Wingo and M. B. at AFM, invoice #AFM-10-05 in the amount of $948,576.14.  Invoice #AFM-10-05 was also, in part, for food actually sold to AFM by J & W Foods.  However, invoice #AFM-10-05, also included the following amounts: (i) $111,812.56 for the full amount of the multiple Fresh Frozen Foods invoices; and (ii) $7,200.72, which represented J&W Foods' handling fee.

77.     On or about November 14, 2005, AFM paid to J&W Foods, check #22131 in the amount of $970,201.70.   This payment was for J&W Foods invoices #AFM-10-05-C ($21,625.56) and #AFM-10-05 ($948,576.14).

78.     On or about November 18, 2005, J&W Foods issued check #1913 in the amount of

21

$2,236.25 to Andy Wingo, completing a series of transactions by which AFM paid the 2% discount to Andy Wingo and a handling fee of $7,200.72 to Askins.

**Empire Beef: April 2006**

79.    On or about April 19, 2006, Andy Wingo instructed Askins that there would be a swap of checks between J&W Foods, AFM, and Andy Wingo, in order for Andy Wingo to obtain a "brokerage fee" on a transaction between AFM and Empire Beef. While at the AFM warehouse in Monroe, Georgia, Askins received AFM check #29805, dated April 19, 2006, signed by Andy Wingo for $11,293.90. J&W Foods had not sold any products to AFM, and AFM had no reason to pay J&W Foods this amount of money.

80.    After receiving the AFM check for $11,293.90, Askins issued J&W Foods check #2081, dated April 21, 2006, to Andy Wingo in the amount $11,293.90, with a memo line noting "AW Brk." This exchange of checks between Andy Wingo and Askins resulted in AFM paying an improper brokerage fee of $11,293.90 to Andy Wingo.

**Protein Solutions, LLC: November 1 to November 16, 2006**

81.    On or about November 1, 2006, AFM faxed to J&W Foods, multiple Protein Solutions, LLC, invoices totaling $507,556.90, for services previously rendered by Protein Solutions, LLC, to AFM.

82.    On or about November 1, 2006, J&W Foods issued check #2268, to Protein Solutions, LLC in the amount of $507,556.90, for payment in full of the multiple foregoing Protein Solutions, LLC, invoices.

83.    On or about November 2, 2006, J&W Foods faxed to the attention of Andy Wingo and M. B. at AFM, invoice # AFM 10/06/A in the amount of $522,975.95. This invoice included

22

the following amounts: (i) 507,556.90, for the full amount of the multiple Protein Solutions, LLC, invoices, and (ii) $15,419.05, which represented a "bump-up" amount.

84.     On or about November 2, 2006, J&W Foods faxed to the attention of Andy Wingo and M. B. at AFM, J&W Foods invoice #AFM 10/06 in the amount of $1,834,130.80, for food actually sold to AFM.

85.     On or about November 13, 2006, AFM issued a wire transfer in the amount of $2,357,106.75, to J&W Foods, after Harry Michaels approved payment of the invoices.    This payment was for J&W Foods invoice #10/06/A ($522,975.95) and invoice #AFM 10/06 ($1,834,130.80).

86.     On or about November 16, 2006, J&W Foods issued check #2288, in the amount of $6,167.62, payable to Andy Wingo, completing a series of transactions by which AFM paid a total "bump-up" amount of $15,419.05, with $6,167.62 to Andy Wingo and $9,251.43 to Askins.

**Protein Solutions, LLC: November 27 to December 14, 2006**

87.     On or about November 27, 2006, Askins informed Andy Wingo that Askins had mistakenly overpriced a J&W Foods "purchase order," or proposed offer to sell, to AFM in the amount of $133,358.40. Andy Wingo told Askins to keep the incorrect price on the eventual invoice to AFM. Further, Andy Wingo told Askins to pay the $133,358.40 difference directly to Good Hope Food Company.

88.     On or about November 27, 2006, J&W Foods issued a wire transfer to Good Hope Food Company in the amount of $118,103.40. This wire transfer amount was $15,255.00 less than the total amount of the overpriced purchase order amount of $133,358.40, because Andy Wingo owed J&W Foods $15,255.00 for an unrelated transaction between Andy Wingo and J&W

23

Foods.

89.    On or about December 6, 2006, J&W Foods faxed to the attention of Andy Wingo and M. B. at AFM, invoice #AFM 11/06 in the amount of $1,583,659.44, which included the price of food actually sold to AFM by J&W Foods, as well as the $133,358.40 overpriced amount.

90.    On or about December 5, 2006, AFM sent to J&W Foods a Protein Solutions, LLC, invoice in the amount of $695,154.00, for services previously rendered by Protein Solutions, LLC, to AFM.

91.    On or about December 5, 2006, J&W Foods issued check #2303, in the amount of $695,154.00, to Protein Solutions, LLC, for payment in full of the foregoing Protein Solutions, LLC invoice.

92.    On or about December 5, 2006, J&W Foods sent an email to Andy Wingo, Harry Michaels, M. B., and C. B., confirming which Protein Solutions, LLC, invoices J&W Foods had paid on behalf of AFM.

93.    On or about December 6, 2006, J&W Foods faxed to the attention of Andy Wingo and M. B. at AFM, J&W Foods invoice #AFM 11/06/A in the amount of $711,781.20. This invoice included the following amounts: (i) $695,154.00, for the full amount of the Protein Solutions, LLC, invoice; and (ii) $16,627.20, which represented the "bump-up" amount.

94.    On or about December 11, 2006, AFM wire transferred funds in the amount of $2,295,440.64, to J&W Foods. This payment was for J&W Foods invoice #AFM 11/06 ($1,583,659.44), and #AFM 11/06/A ($711,781.20), which included the entire overpriced amount of $133,358.40, and the "bump up" amount of $16,627.70, for a total of $149,985.60, in

24

overpayments by AFM.

95.   On or about December 14, 2006, J&W Foods issued check #2314, in the amount of $6,650.88, to Andy Wingo, which was Andy Wingo's 40% split of the $16,627.20 "bump- up" amount on the Protein Solutions, LLC, invoices.

### Popcorn Chicken False Invoice: February 5 to March 8, 2007

96.   On or about February 5, 2007, Defendant Andy Wingo instructed Askins to wire transfer $147,000.00 from the J&W Foods bank account to Good Hope Food Company. Andy Wingo further instructed Askins to submit a J&W Foods invoice to AFM for $147,000.00 which purported to be for popcorn chicken furnished by J&W Foods to AFM. J&W Foods had not furnished any popcorn chicken to AFM and the invoice memorialized a non-existent transaction between AFM and J &W Foods.

97.   On or about February 5, 2007, Askins made a wire transfer of $147,000.00, from the J&W Foods bank account to the Good Hope Food Company bank account, as instructed by Andy Wingo.

98.   On or about February 19, 2007, Askins sent J&W Foods Invoice #AFM 2/07A-1 to AFM seeking payment for the fictitious and nonexistent transaction of popcorn chicken between J&W Foods and AFM in the amount of $147,000.00, per the instructions given by Andy Wingo.

99.   On or about March 8, 2007, a wire transfer from AFM for $147,000.00, was sent to J&W Foods to repay J&W Foods for the money it had transferred to Good Hope Food Company on February 5, 2007, completing a series of transactions whereby AFM transferred $147,000, to Good Hope Food Company, through J&W Foods, all for popcorn chicken that was never sold by J&W Foods to AFM, as described on Invoice #AFM 2/07A-1.

**Fresh Frozen Foods, Protein Solution, LLC, and Perdue Farms: February 2 to March 29, 2007**

100.    On or about February 2, 2007, Fresh Frozen Foods faxed to J&W Foods multiple invoices for food that had been previously picked up by AFM in the total amount of $35,042.40.

101.    On or about February 7, 2007, J&W Foods issued check #2381, to Fresh Frozen Foods in the amount of $34,341.55, for payment in full of the multiple Fresh Frozen Foods invoices, minus a 2% early payment discount of $700.85.

102.    On or about February 8, 2007, Fresh Frozen Foods faxed to J&W Foods another invoice for food that had been previously picked up by AFM in the amount $17,214.30.

103.    On or about February 14, 2007, J&W Foods issued check #2385, to Fresh Frozen Foods in the amount of $16,870.01, for payment in full of the Fresh Frozen Foods invoice, minus a 2% early payment discount of $344.29.

104.    On or about February 14, 2007, Andy Wingo instructed Askins to send Good Hope Food Company $41,328.00, because Andy Wingo claimed that he was able to secure a price for ribs that was 2.05 cents/lb lower than the price Askins planned to bill AFM.

105.    On or about February 14, 2007, J&W Foods sent to AFM, invoice #AFM 2/07A, in the amount of $1,122,937.14. This invoice was, in part, for food actually sold to AFM by J&W Foods. However, this invoice also included the following amounts: (i) $52,256.70 for the full amount of multiple Fresh Frozen Foods invoices; (ii) $3,371.40, which represents J&W Foods three cents/lb handling fee; and (iii) $248,750.00, a "ST LOUIS RIBS" item, which included, as a portion of that total amount, $25,625.00 (a portion of the $41,328.00 requested by Andy Wingo for Good Hope Foods).

26

106.    On or about February 21, 2007, AFM sent to J&W Foods, per the instructions of Harry Michaels, multiple Protein Solutions, LLC, invoices totaling $130,873.04, for services previously rendered by Protein Solutions, LLC, to AFM.

107.    On or about February 21, 2007, J&W Foods issued check #2396, in the amount of $130,873.04, to Protein Solutions, LLC, for payment in full of the AFM invoices.

108.    On or about February 21, 2007, J&W Foods sent to AFM invoice #AFM PS -2007, in the amount of $133,747.34, which included $130,873.04 for full payment on the Protein Solutions, LLC, invoices, plus a "bump-up" amount of $2,874.30, as agreed upon by Andy Wingo.

109.    On or about March 12, 2007, AFM issued a wire transfer to J&W Foods in the amount of $1,256,684.48.  This payment was for invoices #AFM 2/07A ($1,122,937.14) and #AFM PS-2007 ($133,747.34).

110.    On or about February 15, 2007, and continuing through on or about February 20, 2007, Fresh Frozen Foods faxed to J&W Foods multiple invoices for food previously picked up by AFM totaling $48,891.42.

111.    On or about February 21, 2007, J&W Foods issued check #2397, in the amount of $47,913.59, to Fresh Frozen Foods for payment in full of the invoices from Fresh Frozen Foods, minus the 2% early payment discount of $977.83.

112.    On or about February 22, 2007, Fresh Frozen Foods faxed to J&W Foods two invoices for food previously picked up by AFM, in the total amount of $16,439.04.

27

113.   On or about February 27, 2007, J&W Foods issued check #2402, in the amount of $16,110.26, to Fresh Frozen Foods for payment of the two invoices, minus the 2% early payment discount of $328.78.

114.   On or about March 1, 2007, J&W Foods faxed to the attention of Andy Wingo and M.B. at AFM, invoice #AFM 2/07-B, in the amount $1,144,902.56.  This invoice was, in part, for food actually sold to AFM by J &W Foods.  However, this invoice also included the following amounts: (i) $65,330.46 for the full amount of multiple Fresh Frozen Foods invoices; (ii) $4,118.76, which represented J & W Foods three cents/lb handling fee; and (iii) $152,434.00, a "ST LOUIS RIBS" item, which included as a portion of that total amount, $15,703.00 (the balance of the $41,328.00 requested by Andy Wingo for Good Hope Food Company, where $25,625.00 had been previously billed in invoice #AFM 2/07A, and been paid to J&W Foods by the March 12, 2007, wire transfer).

115.   On or about March 9, 2007, AFM emailed to Askins several Protein Solutions, LLC, invoices totaling $416,694.91.

116.   On or about March 9, 2007, J&W Foods issued check #2417, to Protein Solutions, LLC, in the amount of $416,694.91, for payment in full of the AFM invoices.

117.   On or about March 12, 2007, J&W Foods faxed to the attention of Andy Wingo and M. B. at AFM,  invoice #AFMPS Feb.B, in the amount of $425,091.40, which included the total invoices for Protein Solutions ($416,694.91), plus the agreed upon  "bump-up" amount of $8,396.49.

28

118.    On or about March 26, 2007, AFM wire transferred to J&W Foods $1,569,993.96. This payment was for invoices #AFM 2/07-B ($1,144,902.56) and #AFM PS Feb.B ($425,091.40).

119.    On or about March 26, 2007, Andy Wingo instructed Askins to wire transfer $114,000 to Perdue Farms, for products previously provided to AFM by Perdue Farms.

120.    On or about March 26, 2007, J&W Foods issued a wire transfer of $114,000 to Perdue Farms as instructed by Andy Wingo.

121.    On or about March 26, 2007, Askins faxed to Andy Wingo, Harry Michaels and M. B. at AFM, invoice # AFM-326PF, in the amount of $165,000, which included the $114,000, for Perdue Farms, plus an additional $51,000, that Andy Wingo instructed J&W Foods to pay to Good Hope Food Comapny.

122.    On or about March 28, 2007, AFM wire transferred to J&W Foods $165,000, for invoice #AFM-326PF.

123.    On or about March 29, 2007, J&W Foods issued check #2439, in the amount of $92,328.00, to Good Hope Food Company.  This check includes $41,328.00 for the rib price kickback, plus an additional amount of $51,000 related to the Perdue Farms payment.

124.    On or about March 29, 2007, Good Hope Food Company issued check #1349, to Joe Wingo, in the amount of $40,000.00, check # 1350, to Harry Michaels, in the amount of $4,000.00, and check #1351, to Andy Wingo, in the amount of $4,000.00.

125.    On or about March 29, 2007, J&W Foods issued check #2440, in the amount of $6,352.14, to Andy Wingo, which included a portion of the 2% early discount payments to Fresh Frozen Foods ($1,727.13 of $2,351.75) and Andy Wingo's 40% share of the Protein Solutions,

LLC, "bump-up" amount for invoice #AFM PS -2007 ($1,149.72 of $2,874.30), as well as sums owed to Andy Wingo by Askins for various other side deals.

### Andy Wingo's House: March 8 to May 21, 2007

126.   On or about March 8, 2007, and continuing through on or about March 9, 2007, Fresh Frozen Foods faxed to J&W Foods multiple invoices for food previously picked up by AFM from Fresh Frozen Foods, totaling $7,834.32.

127.   On or about March 14, 2007, J&W Foods issued check #2423, to Fresh Frozen Foods, in the amount of $7,677.64, for payment in full of the foregoing multiple Fresh Frozen Foods invoices, minus the 2% early payment discount of $156.68.

128.   On or about March 14, 2007, Andy Wingo informed Askins that Andy Wingo wished to purchase a house, and that Askins should procure a cashier's check in the amount of $347,864.24, made payable to a real estate closing attorney, for the purchase of 1825 Double Bridges Road, Good Hope, Georgia. Andy Wingo further instructed Askins to have J&W Foods recoup the money to fund the purchase of a house for Andy Wingo, by increasing the price of items sold to AFM. The increased charges were to be disguised in the J&W Foods invoices to AFM for actual food sales.

129.   On or about March 14, 2007, Askins purchased cashier's check #4976526237, at First Commercial Bank, Birmingham, Alabama, payable to Attorney M. L. B. Trust Account. The cashier's check listed Andrew L. Wingo as the remitter.

130.   On or about March 14, 2007, Askins transported in interstate commerce from Birmingham, Alabama, to Monroe, Georgia, cashier's check #4976526237, in the amount of

$347,864.24, and handed the check to Andy Wingo, who knew that the cashier's check contained funds which were to be stolen, converted, and taken by fraud.

131.   On or about March 19, 2007, Andy Wingo purchased the house located at 1825 Double Bridges Road, Good Hope, Georgia, for $347,346.24, using the cashier's check delivered to him by Askins as payment in full for the house.

132.   On or about March 27, 2007, J&W Foods faxed, to the attention of Andy Wingo, M. B., and Harry Michaels at AFM, J&W Foods invoice #AFM 3/07-A, in the amount of $1,030,705.64. Following the instructions of Andy Wingo, this invoice was, in part, for food actually purchased by AFM, but to which Askins had applied an increase in the billed amount over the agreed upon price. The increased price resulted in J&W Foods overbilling AFM $106,907.84 to recoup a first portion of the money paid to the attorney's trust account in order to purchase the house for Andy Wingo. Also included in this invoice was the full amount of Fresh Frozen Foods invoices for food purchased by AFM in the amount of $7,834.32, plus a handling fee, which was approximately $580.32. The total overbill in this invoice was approximately $107,644.84.

133.   On or about April 3, 2007, Askins faxed to Harry Michaels an explanation of how Askins, at the direction of Andy Wingo, had increased the price of food sold to AFM in order to recover the money Askins had paid for the purchase a house for Andy Wingo.

134.   On or about April 9, 2007, AFM wire transferred to J&W Foods $1,030,705.64, which included the total overbill of $107,644.84 in invoice #AFM 3/07-A.

135.    On or about March 20, 2007, and continuing through March 28, 2007, Fresh Frozen Foods faxed multiple invoices for food that AFM had previously picked up from Fresh Frozen Foods, totaling $86,689.60.

136.    On or about March 28, 2007, J&W Foods issued check #2435, to Fresh Frozen Foods, in the amount of $84,955.81, for payment in full of the foregoing multiple Fresh Frozen Food invoices, minus the 2% early payment discount of $1,733.79.

137.    On or about April 9, 2007, J&W Foods faxed, to the attention of Andy Wingo, Harry Michaels, and M. B., at AFM, J&W Foods invoice #AFM 3/07-B, for $1,124,095.84. Following the instructions of Andy Wingo, this invoice was for food actually purchased by AFM, which applied an increase in the billed amount over the agreed upon price. This increase in price resulted in J&W Foods overbilling AFM by $97,429.68, to recoup a second portion of the money paid to the attorney's trust account in order to purchase the house for Andy Wingo. Also included in this invoice, were Fresh Frozen Foods invoices in the amount of $86,689.60, plus a handling fee of $4,733.60. The total overbill in this invoice was approximately $103,937.07.

138.    On or about April 23, 2007, AFM issued a wire transfer to J&W Foods in the amount of $1,124,095.84, which included the total overbill of approximately $103,937.07, in invoice #AFM 3/07 B.

139.    On or about April 26, 2007, J&W Foods issued check #2476, in the amount of $3,618.00, to Andy Wingo, which included partial payment of the 2% early discount from Fresh Frozen Foods in the amount of $1,733.79, as well as other transactions with Andy Wingo.

140.   On or about April 3, 2007, and continuing through April 6, 2007, Fresh Frozen Foods faxed to J&W Foods, multiple invoices for food previously picked up by AFM from Fresh Frozen Foods, totaling $57,611.52.

141.   On or about April 11, 2007, J&W Foods issued check # 2455, to Fresh Frozen Foods, in the amount of $56,459.28, for payment in full of the foregoing multiple Fresh Frozen Foods invoices, minus the 2% early payment discount of $1,152.24.

142.   On or about May 1, 2007, J&W Foods faxed to the attention of Andy Wingo, Harry Michaels, M. B., and C. B., at AFM, invoice #AFM 04-07-A, in the amount of $1,237,275.60. Following the instructions of Andy Wingo, Askins, in addition to the price for food actually sold by J&W Foods to AFM, overbilled AFM by $106,599.66, to recoup a third portion of the money paid to the attorney's trust account in order to purchase the house for Andy Wingo. Also, included in this invoice, was the total amount of the Fresh Frozen Foods payment, in the amount of $57,611.52, plus a handling fee of $3,600.72. The total overbill in this invoice was approximately $111,352.56.

143.   On or about May 7, 2007, AFM wire transferred to J&W Foods $1,237,275.60, which included a total overbill of approximately $111,352.56, reflected in J&W Foods invoice #AFM 04-07-A.

144.   On or about April 18, 2007, and continuing through April 20, 2007, Fresh Frozen Foods faxed to J&W Foods invoices for food previously picked up by AFM from Fresh Frozen Foods, totaling $59,477.76.

145.    On or about April 27, 2007, J&W Foods issued check #2477, in amount of $58,288.20, for payment in full of the foregoing multiple Fresh Frozen Foods invoices, minus the 2% early payment discount of $1,189.56.

146.    On or about May 15, 2007, J&W Foods faxed to the attention of Andy Wingo, Harry Michaels, and M. B., at AFM, J&W Foods invoice #AFM 0407-B, dated May 14, 2007, in the amount of $1,154,350.44. Following the instructions of Andy Wingo, Askins, in addition to the price of the food actually sold to AFM by J&W Foods, overbilled AFM by $87,485.10 to recoup the fourth and final portion of the money paid to the attorney's trust account in order to purchase the house for Andy Wingo. Also included in this invoice, was the total amount of the Fresh Frozen Foods invoices, in the amount of $59,477.76, plus a handling fee of $3,717.36. The total overbill in this invoice was approximately $92,392.02.

147.    On or about May 21, 2007, AFM issued to J&W Foods check #60539, in the amount of $1,154,350.44, which included the total overbill of approximately $92,392.02, reflected in J&W Foods invoice #AFM0407-B. This check was transported from Monroe, Georgia, to Birmingham, Alabama, completing a series of transactions by which AFM paid back to Askins the $347,864.24 that Askins previously paid to the real estate closing attorney in order to purchase a house for Andy Wingo. Thus, at the end of these transactions, in addition to funding the entire purchase of a new house for Andy Wingo, AFM had paid Askins $50,557.98 in overbilled funds from AFM, which Askins had not yet passed on to Good Hope Food Company or Andy Wingo.

34

**$75,000 per month for Andy Wingo:  April 20 to June 25, 2007**

148.    On or about April 20, 2007, upon instructions from Andy Wingo, J&W Foods issued a wire transfer, in the amount of $57,000, to Perdue Farms, to pay an AFM invoice for food previously purchased by AFM.

149.    On or about April 23, 2007, upon instructions from Andy Wingo, J&W Foods issued a wire transfer, in the amount of $19,599.84, to General Mills, to pay an AFM invoice for food previously purchased by AFM.

150.    On or about May 14, 2007, Andy Wingo instructed Askins that Andy Wingo now wanted $75,000 per month from J&W Foods, and that J&W Foods should increase its charges to AFM in order to cover these amounts.  Andy Wingo further instructed Askins to pay the $75,000 per month to Good Hope Food Company.

151.    On or about May 14, 2007, J&W Foods wire transferred to Good Hope Food Company the amount of $150,000.  This amount reflected payments of $75,000 per month for April and May, 2007, per Andy Wingo's instruction.

152.    On or about May 14, 2007, Good Hope Food Company issued check #1378, for $2,663.02, to J.P. Muscle Cars, to pay an invoice dated May 1, 2007, for work done for Joe Wingo on a 1956 Chevrolet Bel Air.  Good Hope Food Company also issued check #1379, for $35,010.69, to Robinson Well Company for work done at the personal residences of Joe Wingo and Andy Wingo.  On or about May 15, 2007, Good Hope Food Company issued check # 1383, for $7,725.00, to Stockman Sporting Goods.  On or about May 17, 2007, Good Hope Food Company issued check #1387, for $3,500, to Harry Michaels, and check #1389, for $50,000, to J. D.  Check #1389 was issued to J. D. at the direction of Joe Wingo.

153.   On or about May 15, 2007, Good Hope Food Company check #1379, for $35,010.69, which was for well drilling services at Joe Wingo and Andy Wingo's personal residences, was received by Robinson Well Company, 2189 Monroe Jersey Road, SE, Monroe, Georgia 30655, via U.S. Postal Service.

154.   On or about June 5, 2007, Askins faxed to Andy Wingo, Harry Michaels, M. B., and C. B., at AFM, J&W Foods invoice #AFM 05-07/A, dated May 29, 2007, in the amount of $985,465.64, which included the price for food actually sold by J&W Foods to AFM, as well as an overbill of approximately $128,458.80, in order to recoup the amounts paid to Perdue Farms, General Mills, and a portion of the $150,000 paid to Good Hope Food Company.

155.   On or about June 7, 2007, AFM issued check #61935 to J&W Foods, in the amount of $985,465.64, which included the total overbill of approximately $128,458.80, in J&W Foods invoice #AFM 05-07A.

156.   On or about June 18, 2007, J&W Foods emailed to Andy Wingo, Harry Michaels, M. B., and C. B., at AFM, J&W Foods invoice #AFM 05-07B, dated June 11, 2007, in the amount of $713,098.04, which included the price of food actually sold to AFM by J&W Foods, as well as an overbill of approximately $42,221.76, in order to recoup a portion of the amounts paid to Good Hope Food Company at the direction of Andy Wingo.

157.   On or about June 25, 2007, AFM wire transferred $713,098.04 to J&W Foods, which included the total overbill of approximately $42,221.76, which was reflected in invoice #AFM 05-07B, thereby completing a series of transactions by which J&W Foods, using AFM funds, paid $150,000 to Good Hope Food Company, for the $75,000 per month amount that Andy Wingo demanded.

36

**$75,000 per month for Andy Wingo: June 18 to July 24, 2007**

158.    On or about June 18, 2007, Askins was contacted by Andy Wingo and Harry Michaels about providing $20,000 cash for a trip they intended to make.  Askins responded he could only afford to pay $10,000.

159.    On or about June 18, 2007, J&W Foods issued check # 2538, in the amount of $5,000, to a family member of Askins. On or about June 21, 2007, J&W Foods issued check #2540, in the amount of $5,000, to a second family member of Askins.  Both family members then cashed the checks and returned the money to Askins.

160.    On or about June 22, 2007, Askins traveled to Monroe, Georgia, from Birmingham, Alabama, with the $10,000 in cash.  He delivered the $10,000 in cash to Andy Wingo on the loading dock at AFM, which Askins deducted from the $75,000 per month that he was paying Good Hope Food Company, as instructed by Andy Wingo.

161.    On or about June 28, 2007, J&W Foods wire transferred $65,000 to Good Hope Food Company, which was the remainder of the $75,000 payment to Andy Wingo for June 2007.

162.    On or about June 26, 2007, Good Hope Food Company issued check #1407, to Joe Wingo, in the amount of $10,000.  On or about June 27, 2007, Good Hope Food Company issued check #1415, to J.P. Muscle Cars, in the amount of $17,000.

163.    On or about July 2, 2007, J&W Foods sent to AFM, J&W Foods invoice #AFM 06-07-A, in the amount of $612,288.60, which included the price of food actually sold to AFM by J&W Foods, as well as an overbill of approximately $39,044.52, which was partial payment of the $75,000 per month paid to Good Hope Food Company at the direction of Andy Wingo.

37

164.   On or about July 9, 2007, AFM wire transferred to J&W Foods $612,288.60, which included the total overbill of approximately $39,044.52, reflected in J&W Foods invoice #AFM 06-07-A.

165.   On or about July 12, 2007, J&W Foods sent to AFM, J&W Foods invoice #AFM 06-07-B, in the amount of $590,298.96, which included the price of food actually sold by J&W Foods to AFM, as well as an overbill of approximately $36,911.52, which was partial payment of the $75,000 per month paid to Good Hope Food Company at the direction of Andy Wingo.

166.   On or about July 24, 2007, AFM wire transferred to J&W Foods $590,298.96, which included the total overbill of approximately $36,911.52, as reflected in invoice #AFM 06-07-B, thereby completing a series of transactions in which AFM paid to Good Hope Food Company $75,000 for the month of June 2007, as directed by Andy Wingo.

**AndyKan, LLC property: July 6, 2007, to September 13, 2007**

167.   On or about July 6, 2007, and continuing through July 10, 2007, Fresh Frozen Foods faxed several invoices to J&W Foods for food previously picked up by AFM from Fresh Frozen Foods, in the amount of $41,806.08.

168.   On or about July 11, 2007, J&W Foods issued check #2558, in the amount of $40,969.96, to Fresh Frozen Foods for payment in full for multiple Fresh Frozen Foods invoices, minus the 2% early payment discount of $836.12.

169.   On or about July 12, 2007, as instructed by Andy Wingo, J&W Foods wire transferred to C. and W., escrow agents, the amount of $393,705.00, for the purchase of real estate located in Kansas, by AndyKan, LLC. AndyKan, LLC is a corporation owned by Andy Wingo.

38

170. On or about August 1, 2007, J&W Foods emailed to Andy Wingo, Harry Michaels, and C. B., at AFM, J&W Foods invoice #AFM 07-07-A, dated July 30, 2007, in the amount of $721,328.64, which included the price of food actually sold to AFM by J&W Foods, as well as the total amount of multiple Fresh Frozen Foods invoices, in the amount of $41,806.08, plus a three cents/lb handing fee of approximately $3,300.48. Also included in this invoice, was $34,389.60 in overbilled amounts, for partial payment of the $393,705.00 paid to C. and W., escrow agents, for the AndyKan, LLC property. The total overbill was approximately $38,526.20 in invoice #AFM 07-07-A.

171. On or about August 6, 2007, AFM wire transferred to J&W Foods $721,328.64, which included the total overbill amount of approximately $38,526.20 reflected in invoice #AFM 07-07-A.

172. On or about July 17, 2007, and continuing through July 20, 2007, Fresh Frozen Foods faxed to J&W Foods several invoices for food previously picked up by AFM from Fresh Frozen Foods, in the amount of $41,806.08.

173. On or about July 25, 2007, J&W Foods issued check #2570, in the amount of $40,969.96, to Fresh Frozen Foods for payment in full of the multiple Fresh Frozen Foods invoices, minus the 2% early payment discount of $836.12.

174. On or about August 14, 2007, J&W Foods emailed to AFM, J&W Foods invoice # AFM 07-07-B, in the amount of $680,557.32, which included the total amount of the multiple invoices from Fresh Frozen Foods, in the amount of $41,806.08, plus a three cents/lb handling fee of $3,300.48. Also included in this invoice was $29,143.10 in overbilled amounts in partial payment of the payment to C. and W., escrow agents, for the AndyKan, LLC property. The

39

approximate total overbill in this invoice was $33,279.70.

175.    On or about August 21, 2007, AFM wire transferred to J&W Foods $680,557.32, which included the approximate total overbilled amount of $33,279.70, reflected in invoice #AFM 07-07-B.

176.    On or about August 1, 2007, and continuing through August 3, 2007, Fresh Frozen Foods faxed to J&W Foods several invoices for food previously picked up by AFM from Fresh Frozen Foods in the total amount of $58,800.00.

177.    On or about August 9, 2007, J&W Foods issued check #2585, to Fresh Frozen Foods, in the amount of $57,624.02, which was payment in full of the multiple Fresh Frozen Foods, minus the 2% early payment discount of $ 1,175.98.

178.    On or about September 4, 2007, J&W Foods emailed to AFM, J&W Foods invoice #AFM 0807-A, dated August 31, 2007, in the amount of $640,108.80, which included the price of food actually sold by J&W Foods to AFM, as well as the total amount of the multiple Fresh Frozen Foods invoices, in the amount of $58,800.00, plus a three cents/lb handling fee of $3,600.00. The total overbill in this invoice was approximately $4,775.98.

179.    On or about September 10, 2007, AFM wire transferred to J&W Foods $640,108.80, which included the total overbill amount of $4,775.98, as reflected in invoice #AFM 0807-A.

180.    On or about August 13, 2007, and continuing through August 17, 2007, Fresh Frozen Foods sent multiple invoices to J&W Foods for food previously picked up by AFM, in the amount of $49,403.76.

181.    On or about August 21, 2007, J&W Foods issued check #2597, to Fresh Frozen

Foods, in the amount of $48,415.68, for payment in full, minus the 2% early payment discount of $988.08.

182.   On or about September 17 and 19, 2007, J&W Foods emailed to Andy Wingo, Harry Michaels, M. B., and C. B., at AFM, J&W Foods invoice #AFM 0807-B, dated September 10, 2007, in the amount of $661,203.00, which included the price of food actually sold to AFM by J&W Foods, as well as the Fresh Frozen Foods total amount of multiple invoices, in the amount of $49,403.76, plus a three cents/lb handling fee of $3,024.72. The total overbill for this invoice was approximately $4,012.81.

183   On or about September 24, 2007, AFM wire transferred to J&W Foods $661,203.00, which included the total overbill amount of approximately $4,012.81, as reflected in invoice #AFM 0807-B.

184.   On or about September 5, 2007, J&W Foods was directed by Andy Wingo and Harry Michaels to issue an invoice in the amount of $420,576.40, which purported to be for chicken tenders and popcorn chicken furnished by J&W Foods.  J&W Foods had not furnished any chicken tenders and popcorn chicken to AFM, and the invoice memorialized a non-existent transaction between AFM and J&W Foods.

185.   On or about September 5, 2007, J&W Foods emailed to Andy Wingo and Harry Michaels at AFM, J&W Foods invoice #AFM 8-1-07, dated September 5, 2007, in the amount of $420,576.40, which memorialized a nonexistent transaction for the chicken tenders and popcorn chicken between J&W Foods and AFM, per the instructions of Andy Wingo and Harry Michaels.

186.   On or about September 7, 2007, AFM wire transferred to J&W Foods $420,576.40, for payment of bogus invoice #AFM 8-1-07, dated September 5, 2007.

187.   On or about September 7, 2007, J&W Foods wire transferred to Good Hope Food Company $397,062.80, at the direction of Andy Wingo. The remaining $23,513.60 ($420,576.40 minus $397,062.80) received from AFM was applied by J&W Foods as partial payment towards the money previously paid to C. and W., escrow agents, for the AndyKan, LLC property, completing a series of transactions whereby AFM transferred $397,062.80 to Good Hope Food Company for chicken tenders and popcorn chicken that were never sold by J&W Foods to AFM.

188.   On or about September 11, 2007, J&W Foods sent to AFM, J&W Foods invoice #AFM 8-1-07A, in the amount of $45,954.00, at the direction of Andy Wingo and Harry Michaels, which memorialized a nonexistent transaction for chicken tenders and popcorn chicken. Neither chicken tenders nor popcorn chicken were sold or shipped by J&W Foods to AFM for this invoice.

189.   On or about September 13, 2007, AFM wire transferred to J&W Foods $45,954.00, in payment of the bogus invoice #AFM 8-1-07A, dated September 11, 2007. The amount of $45,954.00 was applied by J&W Foods to recoup a portion of the money previously paid to escrow agents C. and W. for the AndyKan, LLC property.

**Payments from Askins to Linda Wingo**

Beginning on or about February 25, 2005, and continuing through December 14, 2006, Askins, at the direction of Andy Wingo, issued checks to Linda Wingo. After each check cleared Askins' bank account, Askins would then increase his price of goods sold to AFM to recover the amount of money sent to Linda Wingo. Askins issued the following checks at the direction of Andy Wingo:

42

| Overt Act # | Date | Check # | Payee | Amount |
|---|---|---|---|---|
| 190 | 2/25/2005 | 1613 | Linda Wingo | $3,200 |
| 191 | 4/29/2005 | 1688 | Linda Wingo | $4,000 |
| 192 | 6/22/2005 | 1743 | Linda Wingo | $3,153 |
| 193 | 7/29/2005 | 1786 | Linda Wingo | $2,000 |
| 194 | 8/26/2005 | 1825 | Linda Wingo | $3,000 |
| 195 | 11/18/2005 | 1914 | Linda Wingo | $5,000 |
| 196 | 11/18/2005 | 1915 | Linda Wingo | $5,000 |
| 197 | 12/16/2005 | 1947 | Linda Wingo | $20,000 Christmas Bonus |
| 198 | 1/20/2006 | 1980 | Linda Wingo | $5,000 |
| 199 | 2/22/2006 | 2022 | Linda Wingo | $5,000 |
| 200 | 3/24/2006 | 2051 | Linda Wingo | $5,000 |
| 201 | 4/21/2006 | 2083 | Linda Wingo | $5,000 |
| 202 | 5/19/2006 | 2111 | Linda Wingo | $5,000 |
| 203 | 6/23/2006 | 2143 | Linda Wingo | $5,000 |
| 204 | 7/28/2006 | 2171 | Linda Wingo | $5,000 |
| 205 | 8/24/2006 | 2199 | Linda Wingo | $5,000 |
| 206 | 11/16/2006 | 2289 | Linda Wingo | $5,000 |
| 207 | 11/16/2006 | 2290 | Linda Wingo | $5,000 |
| 208 | 12/14/2006 | 2319 | Linda Wingo | $15,000 Christmas Bonus |
| Total | | | | $110,353.00 |

**Payments from Good Hope Food Company to Joe Wingo**

Beginning on or about March 26, 2006, and continuing through September 05, 2007, Joe Wingo received from Good Hope Food Company the following checks:

| Overt Act # | Check Date | Check # | Payee | Amount |
|---|---|---|---|---|
| 209 | 03/26/06 | 1253 | Joe Wingo | $500.00 |
| 210 | 01/05/07 | 1310 | Joe Wingo | $20,000.00 |
| 211 | 02/28/07 | 1339 | Joe Wingo | $20,000.00 |
| 212 | 03/29/07 | 1349 | Joe Wingo | $40,000.00 |
| 213 | 06/04/07 | 1399 | Joe Wingo | $15,000.00 |
| 214 | 06/26/07 | 1407 | Joe Wingo | $10,000.00 |
| 215 | 09/05/07 | 1450 | Joe Wingo | $10,000.00 |
| | | | TOTAL | $115,500.00 |

43

**Payments from Good Hope Food Company to Andy Wingo**

Beginning on or about June 22, 2005, and continuing through November 14, 2007, Andy

Wingo received from Good Hope Food Company the following checks:

| Overt Act # | Check Date | Check # | Payee | Amount |
|---|---|---|---|---|
| 216 | 06/22/05 | 1226 | Andy Wingo | $2,514.95 |
| 217 | 08/02/05 | 1230 | Andy Wingo | $10,000.00 |
| 218 | 12/17/05 | 1232 | Andy Wingo | $4,000.00 |
| 219 | 01/14/06 | 1238 | Andy Wingo | $2,000.00 |
| 220 | 01/19/06 | 1236 | Andy Wingo | $4,000.00 |
| 221 | 01/21/06 | 1237 | Andy Wingo | $3,000.00 |
| 222 | 03/30/06 | 1255 | Andy Wingo | $10,000.00 |
| 223 | 12/12/06 | 1303 | Andy Wingo | $4,500.00 |
| 224 | 12/12/06 | 1304 | Andy Wingo | $4,500.00 |
| 225 | 01/12/07 | 1311 | Andy Wingo | $4,000.00 |
| 226 | 01/12/07 | 1312 | Andy Wingo | $10,000.00 |
| 227 | 03/29/07 | 1351 | Andy Wingo | $4,000.00 |
| 228 | 04/27/07 | 1368 | Andy Wingo | $10,000.00 |
| 229 | 05/05/07 | 1372 | Andy Wingo | $3,000.00 |
| 230 | 05/05/07 | 1373 | Andy Wingo | $3,000.00 |
| 231 | 06/04/07 | 1398 | Andy Wingo | $3,500.00 |
| 232 | 07/03/07 | 1420 | Andy Wingo | $5,000.00 |
| 233 | 09/27/07 | 1462 | Andy Wingo | $3,174.23 |
| 234 | 10/12/07 | 1465 | Andy Wingo | $3,174.23 |
| 235 | 10/15/07 | 1466 | Andy Wingo | $3,500.00 |
| 236 | 10/29/07 | 1472 | Andy Wingo | $25,000.00 |
| 237 | 10/26/07 | 1474 | Andy Wingo | $3,174.23 |
| 238 | 11/14/07 | 1475 | Andy Wingo | $4,126.76 |
|  |  |  | **TOTAL** | **$129,164.40** |

**Payments from Good Hope Food Company to Harry Michaels**

Beginning on or about May 4, 2006, and continuing through August 21, 2007, Harry

Michaels received from Good Hope Food Company the following checks:

44

| Overt Act # | Check Date | Check # | Payee | Amount |
|---|---|---|---|---|
| 239 | 05/04/06 | 1263 | Harry Michaels | $500.00 |
| 240 | 06/23/06 | 1274 | Harry Michaels | $5,000.00 |
| 241 | 08/02/06 | 1283 | Harry Michaels | $2,500.00 |
| 242 | 08/18/06 | 1276 | Harry Michaels | $1,400.00 |
| 243 | 02/15/07 | 1324 | Harry Michaels | $5,000.00 |
| 244 | 02/28/07 | 1337 | Harry Michaels | $4,000.00 |
| 245 | 03/22/07 | 1343 | Harry Michaels | $4,000.00 |
| 246 | 03/29/07 | 1350 | Harry Michaels | $4,000.00 |
| 247 | 04/16/07 | 1362 | Harry Michaels | $4,000.00 |
| 248 | 04/27/07 | 1363 | Harry Michaels | $4,000.00 |
| 249 | 05/15/07 | 1387 | Harry Michaels | $3,500.00 |
| 250 | 06/04/07 | 1397 | Harry Michaels | $3,500.00 |
| 251 | 07/03/07 | 1418 | Harry Michaels | $2,500.00 |
| 252 | 07/03/07 | 1419 | Harry Michaels | $2,500.00 |
| 253 | 08/21/07 | 1438 | Harry Michaels | $5,000.00 |
| | | | **TOTAL** | **$51,400.00** |

**Payments from Good Hope Food Company to Linda Wingo**

Beginning on or about June 18, 2005, and continuing through August 1, 2006, Linda Wingo received from Good Hope Food Company the following checks:

| Overt Act # | Check Date | Check # | Payee | Amount |
|---|---|---|---|---|
| 254 | 06/18/05 | 1224 | Linda Wingo | $500.00 |
| 255 | 08/01/06 | 1282 | Linda Wingo | $15,000.00 |
| | | | **TOTAL** | **$15,500.00** |

The following overt acts were committed in order to further the objects of the conspiracy and to utilize the proceeds of the mail fraud, wire fraud, theft from an organization receiving federal funds, and interstate transportation of stolen property, and to conceal the nature of the source of the funds, by conducting transactions using the Good Hope Food Company, American Express Account, XXXX51009, card as follows:

45

| Overt Act # | Date of purchase | Purchased by | Merchant | Amount |
|---|---|---|---|---|
| 256 | June 20, 2006 | Harry Michaels | Montblanc | $2,487.24 |
| 257 | July 24, 2006 | Harry Michaels | Sportsman Steel Safe Company | $3,043.00 |
| 258 | August 17, 2006 | Harry Michaels | Sportsman Steel Safe Company | $3,043.00 |
| 259 | March 3, 2007 | Harry Michaels | Harrah's Hotel Las Vegas, NV | $633.88 |
| 260 | March 26, 2007 | Joe Wingo | Northern Tool Equipment | $378.90 |
| 261 | March 23, 2007 | Joe Wingo | Ronald Reagan Simi Valley, CA | $140.45 |
| 262 | April 3, 2007 | Harry Michaels | Hertz Rental Scottsdale, AZ | $946.45 |
| 263 | May 22, 2007 | Harry Michaels | Omni Hotel Chicago, IL | $4,302.82 |
| 264 | June 21, 2007 | Harry Michaels | Blue Laser Group Lasik Eye Surg. | $3,900.00 |
| 265 | July 2, 2007 | Harry Michaels | Exclusive Limo Brooklyn, NY | $3,808.27 |
| 266 | July 6, 2007 | Harry Michaels | Exclusive Limo Brooklyn, NY | $834.81 |
| 267 | July 9, 2007 | Harry Michaels | Westin NY Times Square, NY | $1,184.81 |
| 268 | July 26, 2007 | Harry Michaels | Bally's Las Vegas, NV | $585.33 |
| 269 | August 4, 2007 | Harry Michaels | Bally's Las Vegas, NV | $434.91 |
| 270 | August 6, 2007 | Harry Michaels | Bally's Las Vegas, NV | $2,620.49 |
| 271 | August 7, 2007 | Harry Michaels | Tac Air Amarillo, TX | $1,505.52 |
| 272 | September 5, 2007 | Andy Wingo | Bass ProShop Lawrenceville | $3,252.38 |

The following overt acts were committed in order to further the objects of the conspiracy and to utilize the proceeds of the mail fraud, wire fraud, thefts from an organization receiving federal funds, and interstate transportation of stolen funds, and to conceal the nature of the source

46

of the funds by conducting transactions using the Good Hope Food Company, American Express Account, XXXX81002 card, as follows:

| Overt Act # | Date of purchase | Purchased by | Merchant | Amount |
|---|---|---|---|---|
| 273 | July 9, 2007 | Andy Wingo | Westin New York Times Square, NY | $5,311.09 |
| 274 | July 10, 2007 | Andy Wingo | Westin New York Times Square, NY | $4,347.06 |
| 275 | July 10, 2007 | Andy Wingo | Westin New York Times Square, NY | $531.17 |

The following overt acts were committed in order to further the objects of the conspiracy and in order to further conceal the Defendant(s)' assets by making electronic transfers from the Good Hope Food Company Athens First Bank Account, XXXX6322, to the Good Hope Food Company, American Express Account, XXXXX51009, as follows:

| Overt Act # | Date of payment | Amount |
|---|---|---|
| 276 | March 20, 2006 | $1,377.28 |
| 277 | May 5, 2006 | $492.91 |
| 278 | June 2, 2006 | $4,855.72 |
| 279 | June 29, 2006 | $5,000.00 |
| 280 | July 20, 2006 | $5,631.40 |
| 281 | July 27, 2006 | $2,000.00 |
| 282 | August 18, 2006 | $4,000.00 |
| 283 | August 25, 2006 | $2,000.00 |
| 284 | September 29, 2006 | $3,500.00 |
| 285 | November 27, 2006 | $2,000.00 |
| 286 | December 21, 2006 | $2,000.00 |
| 287 | December 27, 2006 | $2,000.00 |
| 288 | January 3, 2007 | $4,000.00 |
| 289 | January 26, 2007 | $5,000.00 |
| 290 | February 12, 2007 | $2,500.00 |

| 291 | March 30, 2007 | $3,500.00 |
| 292 | April 12, 2007 | $3,000.00 |
| 293 | May 21, 2007 | $5,000.00 |
| 294 | June 7, 2007 | $14,600.00 |
| 295 | June 18, 2007 | $5,000.00 |
| 296 | July 3, 2007 | $8,588.87 |
| 297 | July 27, 2007 | $13,500.00 |
| 298 | August 16, 2007 | $7,149.46 |
| 299 | September 27, 2007 | $365.78 |
| | **Total** | **$107,061.42** |

300.    On or about June 26, 2007, Harry Michaels called K. M., the president of Poultry Plus, LLC, Pine Brook, New Jersey, and asked him to wire $10,000 to Trump Plaza Hotel Casino in Atlantic City, New Jersey.  The money was to be split equally between Harry Michaels and Andy Wingo.  Harry Michaels advised K. M. to bill for cold storage in order to recover the money he sent to the Trump Plaza Hotel Casino.

301.    On or about September 20, 2007, K. M. submitted a bill to Good Hope Food Company which included a charge of $10,000 for cold storage. The invoice covered the amount wired to Trump Plaza Hotel Casino and was reimbursed by Good Hope Food Company for the bogus charge of $10,000.

302.    On or about April 21, 2006, the Defendant(s), Joe Wingo, Andy Wingo, and Harry Michaels, did cause to be transported, transmitted, transferred in interstate commerce from Birmingham, Alabama, to Monroe, Georgia, a check, to wit: a check #2081, drawn on J&W Foods First Commercial Bank account, written by Askins, in the amount of $11,293.90.

303.    On or about January 6, 2006, Signature Foods aka Signature Custom Packing, approached Andy Wingo with a plan to give AFM a volume discount due to the amount of business AFM was doing with Signature Foods aka Signature Custom Packing.  The agreement

was that Signature Foods aka Signature Custom Packing would pay these rebates to AFM for business done with AFM.

304.   On or about May 5, 2006, Andy Wingo instructed C. M. and T. S. to send checks for the AFM rebates to Good Hope Food Company.

During 2006 and 2007, the following rebates from Signature Foods aka Signature Custom Packing accrued to AFM and were paid to Good Hope Food Company:

| Overt Act # | Date | Check # | Payor | Payee | Purpose of Payment | Amount |
|---|---|---|---|---|---|---|
| 305 | 05/04/06 | 1602 | Signature Custom Packing | GHFC | Jan 06 - Apr 06 Rebate | $14,299.98 |
| 306 | 09/27/06 | 1791 | Signature Custom Packing | GHFC | May 06 -Aug 06 Rebate | $13,499.48 |
| 307 | 11/28/06 | Wire Transfer | Signature Food Marketing LLC | GHFC | Sep 06 - Nov 06 Rebate | $22,250.04 |
| 308 | 01/05/07 | 1924 | Signature Custom Packing | GHFC | Dec 06 Rebate and 25% Bonus | $16,898.48 |
| 309 | 03/01/07 | 2052 | Signature Custom Packing | GHFC | Jan 06 - Mar 07 Rebate | $10,099.16 |
| 310 | 06/21/07 | Wire Transfer | Signature Custom Packing | Trump Plaza Hotel Casino | Rebate wired to casino | $13,000.00 |
| Total AFM Rebates Paid by Signature Custom Packing | | | | | | $90,047.14 |

*Note - Total wire transfer made on 11/28/06 for $87,834.64 included $22,250.04 rebate payment and $65,584.60 payment for AFM product.

311.   On or about June 7, 2007, Harry Michaels and Andy Wingo obtained the bank wire procedures for transferring money to Trump Plaza Hotel Casino for the use of Harry Michaels and Andy Wingo.

312.    On or about June 22, 2007, Signature Foods, located in Pendergrass, Georgia, at the direction of Harry Michaels, wire transferred to Trump Plaza Hotel Casino the amount of $13,000. The amount of $13,000 was divided evenly between Harry Michaels and Andy Wingo's accounts at Trump Plaza Hotel Casino, with each receiving $6,500.

During 2006 and 2007, the following Overt Acts represent transactions where Signature Foods purchased food from AFM, when in fact, at the direction of Andy Wingo and Harry Michaels, the payments were made to Good Hope Food Company instead of AFM.

| Overt Act # | Date | Check # | Payor | Payee | Purpose of Payment | Amount |
|---|---|---|---|---|---|---|
| 313 | 07/20/06 | 1711 | Signature Custom Packing | GHFC | Purchase of AFM food | $17,130.00 |
| 314 | 07/20/06 | 1712 | Signature Custom Packing | GHFC | Purchase of AFM food | $34,272.00 |
| 315 | 08/23/06 | 1759 | Signature Custom Packing | GHFC | Purchase of AFM food | $16,275.50 |
| 316 | 09/27/06 | 1792 | Signature Custom Packing | GHFC | Purchase of AFM food | $29,952.00 |
| 317 | 11/28/06 | Wire Transfer | Signature Food Marketing LLC | GHFC | Purchase of AFM food | $65,584.60 |
| 318 | 02/07/07 | 1993 | Signature Custom Packing | GHFC | Purchase of AFM food | $18,000.00 |
| 319 | 03/15/07 | 2045 | Signature Custom Packing | GHFC | Purchase of AFM food | $20,555.60 |
| 320 | 03/28/07 | 2072 | Signature Custom Packing | GHFC | Purchase of AFM food | $17,124.80 |
| 321 | 04/11/07 | 2093 | Signature Custom Packing | GHFC | Purchase of AFM food | $4,329.60 |
| 322 | 05/23/07 | 2187 | Signature Custom Packing | GHFC | Purchase of AFM food | $3,660.80 |
| 323 | 05/25/07 | 1577 | Signature Food Marketing LLC | GHFC | Purchase of AFM food | $3,000.00 |
| 324 | 05/25/07 | 1576 | Signature Food Marketing LLC | GHFC | Purchase of AFM food | $26,760.00 |

| 325 | 06/06/07 | 2202 | Signature Custom Packing | GHFC | Purchase of AFM food | $17,100.00 |
|---|---|---|---|---|---|---|
| 326 | 06/11/07 | 1578 | Signature Food Marketing LLC | GHFC | Purchase of AFM food | $30,672.00 |
| 327 | 06/25/07 | 1596 | Signature Food Marketing LLC | GHFC | Purchase of AFM food | $30,528.00 |
| 328 | 06/30/07 | 1606 | Signature Food Marketing LLC | GHFC | Purchase of AFM food | $30,144.00 |
| 329 | 07/24/07 | 1621 | Signature Food Marketing LLC | GHFC | Purchase of AFM food | $14,880.00 |
| 330 | 07/25/07 | 2313 | Signature Custom Packing | GHFC | Purchase of AFM food | $5,448.00 |
| 331 | 08/02/07 | 2323 | Signature Custom Packing | GHFC | Purchase of AFM food | $8,100.00 |
| 332 | 09/20/07 | 2419 | Signature Custom Packing | GHFC | Purchase of AFM food | $33,354.00 |
| Total AFM Product Purchases Paid by Signature Custom Packing | | | | | | $426,870.90 |

### Bonus/Campaign Contribution Scheme

333.     Beginning on or about April 25, 2008, and continuing to on or about May 14,

2008, various employees of AFM were approached by Joe Wingo and others at his direction

about supporting A. Y.'s campaign for Sheriff of Walton County, Georgia, home of AFM. Joe

Wingo used this method of converting monies of AFM to the political campaign of A. Y. due to

the IRS regulations which prohibited 501(c) tax exempt corporations from becoming involved in

political activity. Some employees were instructed that they were receiving a bonus which was to

be donated to A. Y.'s campaign. Others were informed that they were receiving a bonus that was

the reimbursement for the donation they had already made at the direction of Joe Wingo. These

transactions resulted in an intentional misapplication of property of AFM. On or about May 15,

2008, Joe Wingo, as CEO of AFM, hosted a barbeque at the AFM Airport Hangar for candidate

A. Y. and had various employees of AFM present their donation checks to the candidate.

51

These bonuses were drawn on AFM's Payroll Account, # XXX0701, at Athens First Bank

and Trust.

| Check Date | Check Number | AFM Employee | Amount |
|---|---|---|---|
| April 29, 2008 | 1163 | Employee M. B. | $2,100.00 |
| April 30, 2008 | 1169 | Employee D. W. | $2,100.00 |
| May 09, 2008 | 1191 | Employee A. B. | $2,050.00 |
| May 14, 2008 | 1196 | Employee J. W. | $2,000.00 |
| May 14, 2008 | 1197 | Employee T. P. | $2,000.00 |
| May 14, 2008 | 1198 | Employee G. D. | $2,000.00 |
| May 14, 2008 | 1199 | Employee D. M. | $1,000.00 |
| May 14, 2008 | 1200 | Employee D. B. | $1,000.00 |
| May 14, 2008 | 1201 | Employee M. W. | $1,000.00 |
| May 14, 2008 | 1202 | Employee D. A. | $500.00 |
| May 14, 2008 | 1203 | Employee L. H. | $500.00 |
| May 14, 2008 | 1204 | Employee J. P. | $500.00 |
| May 14, 2008 | 1206 | Employee C. B. | $500.00 |
| May 14, 2008 | 1207 | Employee M. S. | $500.00 |
| May 14, 2008 | 1208 | Employee W. A. | $500.00 |
| May 14, 2008 | 1209 | Employee R. E. | $500.00 |
| May 14, 2008 | 1210 | Employee B. T. | $1,000.00 |
| May 14, 2008 | 1211 | Employee T. B. | $500.00 |
| May 14, 2008 | 1214 | Employee M. S. | $1,000.00 |
| Total | | | $21,250.00 |

The following deposits were made into the Campaign Fund for A. Y.  account #XXX3853

at the National Bank of Walton County.

| Overt Act # | Date of Deposit | Check deposited | Amount |
|---|---|---|---|
| 334 | 4/08/2008 | Employee M. S. | $1,000.00 |
| 335 | 4/26/2008 | Employee M. B. | $2,000.00 |
| 336 | 4/26/2008 | Employee D. W. | $2,000.00 |
| 337 | 5/08/2008 | Employee A. B. | $2,000.00 |
| 338 | 5/08/2008 | Employee W. T. | $500.00 |
| 339 | 5/15/2008 | Employee D. M. | $1,000.00 |
| 340 | 5/22/2008 | Employee D. B. | $1,000.00 |
| 341 | 5/22/2008 | Employee J. P. | $500.00 |
| 342 | 5/22/2008 | Employee D. P. | $1,000.00 |
| 343 | 5/22/2008 | Employee W. T. | $1,000.00 |

| 344 | 5/22/2008 | Employee R. E. | $500.00 |
| 345 | 5/22/2008 | Employee C. B. | $500.00 |
| 346 | 5/22/2008 | Employee J. A. | $500.00 |
| 347 | 5/22/2008 | Employee M. W. | $1,000.00 |
| 348 | 5/22/2008 | Employee G. D. | $2,000.00 |
| 349 | 5/22/2008 | Employee W. A. | $500.00 |
| 350 | 5/22/2008 | Employee L. H. | $500.00 |
| 351 | 5/22/2008 | Employee S. D. | $1,000.00 |
| 352 | 5/22/2008 | Employee J. W. | $2,000.00 |
| **Total** | | | **$20,500.00** |

353. The 2008 IRS Form 990 filed electronically by AFM in response to Question Three on Page Four, states that AFM has not engaged in direct or indirect political campaign activities on the behalf of, or in opposition to, candidates for public office.

354. On or about January 1, 2007, and continuing through December 31, 2008, Linda Wingo attempted to persuade employees of AFM and EPC not to reveal to the FBI information which she had shared with them by telling them to tell the FBI that she had not made any statements to them and that any statements that she had made were covered by the attorney/client privilege.

355. On or about January 1, 2008, and continuing through February 28, 2009, Linda Wingo instructed an employee of AFM to remove the hard drive of a computer which had been used by individuals associated with the Defendant(s) from the premises of her home at 3051 Nunnally Shoals, Good Hope, Georgia, 30641, and to destroy the hard drive of the computer with the intent to impair its integrity and availability for use and to impede the ongoing federal grand jury investigation.

356. On or about August 12, 2011, and continuing through September 28, 2011, Linda Wingo advised C. M. that C. M. should tell the FBI that Linda Wingo had never disclosed any

information to C. M. and that any statements made by Linda Wingo were covered by the attorney/client privilege.

All in violation of Title 18, United States Code, Sections 371 and 2.

## COUNTS TWO THROUGH TWENTY FOUR
## 18 U.S.C. § 1343
### Wire Fraud

The factual allegations contained in paragraphs one through seventeen of the General Introduction and Count One of the Indictment are incorporated herein as if set forth in full.

### Scheme and Artifice to Defraud

The scheme to defraud AFM and to obtain money and property by means of materially false and fraudulent pretenses involved the Defendant(s) increasing the price paid by AFM and then diverting the increased amount to themselves and for their personal benefit. The scheme involved various Defendant(s) directing vendors to inflate invoices to AFM, the approval of these invoices by the Defendant(s) and then a portion of the inflated invoices being paid to the Defendant(s) as a kickback.

From on or about October 16, 2006, and continuing to on or about September 27, 2007, in the Athens Division of the Middle District of Georgia, and elsewhere, the Defendant(s),

**JOE WINGO,**
**ANDY WINGO,**
**LINDA WINGO, and**
**HARRY MICHAELS,**

devised and intended to devise a scheme to defraud AFM, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

54

On or about each of the dates set forth below, in the Middle District of Georgia, Athens Division, and elsewhere, Defendant(s) Joe Wingo, Andy Wingo, Linda Wingo, and Harry Michaels, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communications in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Amount Of Wire | Receiving Party | Account | Estimated Loss |
|---|---|---|---|---|---|
| 2 | December 11, 2006 | $2,295,440.64 | J&W Foods | Regions Bank xxx5442 | $149,985.60 |
| 3 | January 2, 2007 | $288,990.00 | J&W Foods | Regions Bank xxx5442 | $288,990.00 |
| 4 | January 8, 2007 | $2,500,000.00 | J&W Foods | Regions Bank xxx5442 | $14,022.24 |
| 5 | February 5, 2007 | $1,166,435.44 | J&W Foods | Regions Bank xxx5442 | $15,210.00 |
| 6 | February 16, 2007 | $393,675.24 | J&W Foods | Regions Bank xxx5442 | $2,160.21 |
| 7 | March 8, 2007 | $147,000.00 | J&W Foods | Regions Bank xxx5442 | $147,000.00 |
| 8 | March 12, 2007 | $1,256,684.48 | J&W Foods | Regions Bank xxx5442 | $32,915.84 |
| 9 | March 26, 2007 | $1,569,993.96 | J&W Foods | Regions Bank xxx5442 | $29,524.86 |
| 10 | March 28, 2007 | $165,000.00 | J&W Foods | Regions Bank xxx5442 | $51,000.00 |
| 11 | April 9, 2007 | $1,030,705.64 | J&W Foods | Regions Bank xxx5442 | $107,644.84 |

| 12 | April 23, 2007 | $1,124,095.84 | J&W Foods | Regions Bank xxx5442 | $103,937.07 |
|----|----------------|---------------|-----------|----------------------|-------------|
| 13 | May 7, 2007 | $1,237,275.60 | J&W Foods | Regions Bank xxx5442 | $111,352.56 |
| 14 | June 25, 2007 | $713,098.40 | J&W Foods | Regions Bank xxx5442 | $42,221.76 |
| 15 | July 9, 2007 | $612,288.60 | J&W Foods | Regions Bank xxx5442 | $39,044.52 |
| 16 | May 21, 2007 | $1,154,350.44 | J&W Foods | Regions Bank xxx5442 | $92,392.02 |
| 17 | June 7, 2007 | $985,465.64 | J&W Foods | Regions Bank xxx5442 | $128,458.80 |
| 18 | July 24, 2007 | $590,298.96 | J&W Foods | Regions Bank xxx5442 | $36,911.52 |
| 19 | August 6, 2007 | $721,328.64 | J&W Foods | Regions Bank xxx5442 | $38,526.20 |
| 20 | August 21, 2007 | $680,557.32 | J&W Foods | Regions Bank xxx5442 | $33,279.79 |
| 21 | September 7, 2007 | $420,576.40 | J&W Foods | Regions Bank xxx5442 | $420,576.40 |
| 22 | September 10, 2007 | $640,108.80 | J&W Foods | Regions Bank xxx5442 | $4,775.98 |
| 23 | September 13, 2007 | $45,954.00 | J&W Foods | Regions Bank xxx5442 | $45,954.00 |
| 24 | September 24, 2007 | $661,203.00 | J&W Foods | Regions Bank xxx5442 | $4,012.80 |
|   | **Total** |   |   |   | **$1,939,896.92** |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS TWENTY FIVE THROUGH THIRTY NINE
### 18 U.S.C. § 1957
### Money Laundering

The factual allegations contained in paragraphs one through seventeen of the General Introduction and Counts One through Twenty Four of the Indictment are incorporated herein as if set forth in full.

On or about the dates set forth below, in the Athens Division of the Middle District of Georgia, and elsewhere, the Defendant(s),

**JOE WINGO,**
**ANDY WINGO,**
**LINDA WINGO, and**
**HARRY MICHAELS,**

did knowingly engage and attempt to engage in the following monetary transactions by, through, and to Athens First, a financial institution, affecting interstate and foreign commerce using  Good Hope Food Company Account #XXX6322, in criminally derived property of a value greater than $10,000, to wit: checks and wire transfers, such property having been derived from a specified unlawful activity, to wit: wire fraud, mail fraud, theft from an organization receiving federal funds and interstate transportation of stolen funds:

| Count | Date | Check Number | Amount | Payee |
|-------|------|--------------|--------|-------|
| 25 | 12/07/06 | 1299 | $150,000.00 | High Adventure Game Ranch |
| 26 | 12/21/06 | 1305 | $19,410.00 | A. R. |
| 27 | 12/20/06 | 1306 | $10,400.00 | Triple Vision |
| 28 | 01/16/07 | 1310 | $20,000.00 | Joe Wingo |
| 29 | 01/29/07 | 1318 | $27,000.00 | JP's Muscle Cars |

| Count | Date | Check Number | Amount | Payee |
|-------|------|--------------|--------|-------|
| 30 | 03/02/07 | 1339 | $20,000.00 | Joe Wingo |
| 31 | 03/15/07 | 1340 | $11,497.00 | A. R. |
| 32 | 04/02/07 | 1349 | $40,000.00 | Joe Wingo |
| 33 | 05/17/07 | 1379 | $35,010.69 | Robinson Well Company |
| 34 | 05/17/07 | 1389 | $50,000.00 | J. D. |
| 35 | 05/22/07 | Debit card purchase | $20,367.45 | Clyde Armory |
| 36 | 06/05/07 | 1399 | $15,000.00 | Joe Wingo |
| 37 | 07/05/07 | 1415 | $17,000.00 | JP's Muscle Cars |
| 38 | 07/17/07 | 1426 | $25,000.00 | Watchmen Inc. |
| 39 | 10/29/07 | 1472 | $25,000.00 | Andy Wingo |

All in violation of Title 18, United States Codes, Sections 1957 and 2.

## COUNT FORTY
### Conspiracy to Commit Money Laundering
### 18 U.S.C. § 1956(h)

__THE CONSPIRACY__

The factual allegations contained in paragraphs one through seventeen of the General Introduction and Counts One through Thirty-Nine of the Indictment are incorporated herein as if set forth in full.

From on or about January 1, 2003, through December 30, 2009, in the Athens Division of the Middle District of Georgia and elsewhere, the Defendant(s),

**JOE WINGO,**
**ANDY WINGO**
**LINDA WINGO, and**
**HARRY MICHAELS,**

did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, to wit:

(a)  to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is mail fraud, and wire fraud and theft from an organization receiving federal funds  with the intent to promote the carrying on the above stated specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(b) to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, mail fraud and wire fraud and theft from an organization receiving federal funds, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the

59

property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(c) to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is check and wire transfers, such property having been derived from a specified unlawful activity, that is, mail fraud, wire fraud and theft from an organization receiving federal funds, in violation of Title 18, United States Code, Section 1957.

**MANNER AND MEANS**

The manner and means used to accomplish the objects of the conspiracy included, among others, the following:

1.    That the Defendant(s) would engage vendors and brokers providing food to AFM to pay to the Defendant(s) kickbacks in order to continue doing business with AFM. That the Defendant(s) would instruct the vendors and brokers to inflate the price of goods sold to AFM in order to cover the amount of the kickbacks paid to the Defendant(s).

2.    That the Defendant(s) would divert monies due to AFM for volume rebates and excess AFM inventory sold by having the vendors make payments directly to Good Hope Food Company rather than AFM.

3.    AFM would then pay the invoices, which would include the full amount of invoices that reflected the inflated price and the amounts that were paid to the Defendant(s) through Good Hope Food Company and to other individuals who were providing services to Defendant(s).

4.    AFM would not receive the monies due to AFM for volume rebates or for excess

60

AFM inventory sold.

     5.      That the Defendant(s) would thereby divert money from AFM and divert money that was due to AFM.

     6.      That the Defendant(s) used Good Hope Food Company to conceal the nature, ownership, location and control of the money that should have been paid to AFM.

     7.      That the Defendant(s) would use Good Hope Food Company to promote the carrying on of the mail fraud, wire fraud, theft of funds from an organization receiving federal funds and interstate transportation of stolen property.

     All in violation of Title 18, United States Code, Section 1956(h).

**COUNT FORTY ONE**
**18 U.S.C. § 666**
**Theft from an Organization Receiving Federal Funds**

     The factual allegations contained in paragraphs one through seventeen of the General Introduction and Count One of the Indictment are incorporated herein as if set forth in full.

     a.      At all times material to this indictment, AFM was an organization that received federal assistance in excess of $10,000, during the one year period beginning November 1, 2006, through November 1, 2007. AFM received a USDA Food and Nutrition grant from USDA on or about September 26, 2006. The first payment was $25,000, which was paid to AFM on December 12, 2006.

     b.      Defendants Joe Wingo and Linda Wingo were agents of AFM.

     Beginning on or about December 1, 2006, and continuing through December 1, 2007, in the Athens Division of the Middle District of Georgia, Defendants,

61

**JOE WINGO and
LINDA WINGO**

did intentionally misapply and knowingly embezzle, steal, obtain by fraud and otherwise without

legal authority convert to their own use and the use of others, property, valued in excess of $5,000

and owned by, and under the control of AFM, to wit: Joe Wingo and Linda Wingo used AFM

funds in the amount of $1,482,035.50 to pay bonuses to Joe Wingo, Linda Wingo, Andy Wingo,

W. W. and L. W.

All in violation of Title 18, United States Code, Section 666.

## COUNT FORTY TWO
## 18 U.S.C. § 666
### Theft from an Organization Receiving Federal Funds

The factual allegations contained in paragraphs one through seventeen of the General

Introduction and Count One of the Indictment are incorporated herein as if set forth in full.

a.      At all times material to this indictment, AFM was an organization that received

federal assistance in excess of $10,000, during the one year period beginning January 1, 2008,

through December 31, 2008. AFM received a USDA Food and Nutrition grant from USDA on or

about September 26, 2006. In 2008, AFM received $166,000 from USDA from this grant.

b.      Defendant Joe Wingo was an agent of AFM.

Beginning on or about April 25, 2008, and continuing through May 14, 2008, in the

Athens Division of the Middle District of Georgia, Defendant,

**JOE WINGO,**

did intentionally misapply and knowingly embezzle, steal, obtain by fraud and otherwise without

legal authority convert to his own use and the use of others, property, valued in excess of $5,000

and owned by, and under the control of AFM, to wit: Joe Wingo used AFM funds in the amount

of $21,250 to pay bonuses and to reimburse employees who, at the direction of Joe Wingo, had

made campaign contributions to the campaign of A.Y. in the amount of $20,500.

All in violation of Title 18, United States Code, Section 666(a)(1)(A).

### COUNT FORTY THREE
### 18 U.S.C. § 2314
### Interstate Transportation of Stolen Property

The factual allegations contained in paragraphs one through seventeen of the General

Introduction and Count One of the Indictment are incorporated herein as if set forth in full.

On or about the 21st day of April, 2006, in the Athens Division of the Middle District of

Georgia, the Defendants,

### JOE WINGO,
### ANDY WINGO, and
### HARRY MICHAELS,

did cause to be transported, transmitted, transferred in interstate commerce from Birmingham,

Alabama, to Monroe, Georgia, a check, to wit: a check #2081, drawn on First Commercial Bank,

written by Askins, in the amount of $11,293.90, and made payable to Andy Wingo, knowing

that said check contained $5,000 of funds that had been stolen, converted, and taken by fraud.

All in violation of Title 18, United States Code, Section 2314.

### COUNT FORTY FOUR
### 18 U.S.C. § 2314
### Interstate Transportation of Stolen Property

The factual allegations contained in paragraphs one through seventeen of the General Introduction and Count One of the Indictment are incorporated herein as if set forth in full.

On or about the March 14, 2007, in the Athens Division of the Middle District of Georgia, the Defendants,

### JOE WINGO,
### ANDY WINGO, and
### HARRY MICHAELS,

did cause to be transported, transmitted, transferred in interstate commerce from Birmingham, Alabama, to Monroe, Georgia, a check, to wit: a cashier's check 4976526237, drawn on First Commercial Bank, purchased by Askins, in the amount of $347,864.24, and made payable to the real estate closing attorney, and reflecting Andy Wingo as the remitter, knowing that said check contained $5,000 of funds that had been stolen, converted, and taken by fraud.

All in violation of Title 18, United States Code, Section 2314.

### COUNT FORTY FIVE
### 18 U.S.C. § 2314
### Interstate Transportation of Stolen Property

The factual allegations contained in paragraphs one through seventeen of the General Introduction and Count One of the Indictment are incorporated herein as if set forth in full.

On or about the May 21, 2007, in the Athens Division of the Middle District of Georgia, the Defendants,

**JOE WINGO,**
**ANDY WINGO, and**
**HARRY MICHAELS,**

did cause to be transported, transmitted, transferred in interstate commerce from   Monroe, Georgia,  to Birmingham, Alabama,  a check, to wit: check #60539, drawn on the AFM Regions Bank account, and made payable to J&W Foods, in the amount of $1,154,350.44, knowing that said check contained $5,000 of funds that had been stolen, converted, and taken by fraud.

All in violation of Title 18, United States Code, Section 2314.

### COUNT FORTY SIX
### 18 U.S.C. § 2314
### Interstate Transportation of Stolen Property

The factual allegations contained in paragraphs one through seventeen of the General Introduction and Count One  of the Indictment are incorporated herein as if set forth in full.

On or about the June 7, 2007, in the Athens Division of the Middle District of Georgia, the Defendants,

**JOE WINGO,**
**ANDY WINGO, and**
**HARRY MICHAELS,**

did cause to be transported, transmitted, transferred in interstate commerce from   Monroe, Georgia,  to  Birmingham, Alabama, a check, to wit: check  #61935, drawn on the AFM Regions Bank account and made payable to J&W Foods, in the amount of $985,465.64, knowing that said check contained $5,000 of funds that had been stolen, converted, and taken by fraud.

65

All in violation of Title 18, United States Code, Section 2314.

## COUNT FORTY SEVEN
## 18 U.S.C. § 1512(b)(3)
## Tampering with Witnesses and Obstruction of Justice

The factual allegations contained in paragraphs one through seventeen of the General Introduction and Count One of the Indictment are incorporated herein as if set forth in full

On or about January 1, 2007, and continuing through December 31, 2008, in the Athens Division of the Middle District of Georgia, the Defendant,

## LINDA WINGO,

did knowingly, corruptly persuade, and engage in misleading conduct and did attempt to corruptly persuade and engage in misleading conduct toward C. M., J. R., and F. W. with the intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States information relating to the commission or possible commission of Federal offenses, in that Linda Wingo told C. M., J. R., and F. W. that C. M., J. R., and F. W. should advise the FBI agents that Linda Wingo had never disclosed any information to C. M., J. R., and F. W., further stating that any statements made by Linda Wingo were covered by the attorney/client privilege, that C. M., J. R., and F. W. were not required to talk to the FBI, and that if C. M., J. R., and F. W. did talk to the FBI C. M., J. R., and F. W. should not disclose anything that Linda Wingo had told C. M., J. R., and F. W., when in fact Linda Wingo had made disclosures to C. M., J. R., and F. W. All in violation of Title 18, United States Code, Section 1512(b)(3).

66

## COUNT FORTY EIGHT
### 18 U.S.C. § 1512(c)
### Tampering with Witnesses and Obstruction of Justice

The factual allegations contained in paragraphs one through seventeen of the General Introduction and Count One of the Indictment are incorporated herein as if set forth in full.

On or about the January 1, 2008, and continuing through February 28, 2009, in the Athens Division of the Middle District of Georgia, the Defendant,

### LINDA WINGO,

did corruptly alter, destroy, mutilate, conceal, and did attempt to alter, destroy, mutilate, and conceal a document and object, by instructing B. B. to remove and destroy a hard drive of a computer located at Linda Wingo's home at 3051 Nunnally Shoals Drive, Good Hope, Georgia, and which had been used by individuals associated with the Defendant(s), with the intent to impair its integrity and availability for use, and to impede an official proceeding, to wit: the grand jury investigation in the Middle District of Georgia.

All in violation of Title 18, United States Code, Section 1512(c).

## COUNT FORTY NINE
### 18 U.S.C. § 1512(b)(3)
### Tampering with Witnesses and Obstruction of Justice

The factual allegations contained in paragraphs one through seventeen of the General Introduction and Count One of the Indictment are incorporated herein as if set forth in full.

On or about August 12, 2011, and continuing through September 28, 2011, in the Athens Division of the Middle District of Georgia, the Defendant,

**LINDA WINGO,**

did knowingly, corruptly persuade, and engage in misleading conduct and did attempt to corruptly

persuade and engage in misleading conduct toward C. M. with the intent to hinder, delay, and

prevent the communication to a law enforcement officer of the United States  information relating

to the commission or possible commission of a Federal offense, in that the Defendant told C. M.

that C. M. should advise the FBI agents that Linda Wingo had never disclosed any information to

C. M., further stating that any statements made by Linda Wingo were covered by the

attorney/client privilege,  that C. M. was not required to talk to the FBI, and that if C. M. did talk

to the FBI, C.M. should not disclose anything that Linda Wingo had told C. M., when in fact

Linda Wingo had made disclosures to C. M.

All in violation of Title 18 United States Code, Section 1512(b)(3).

## FORFEITURE NOTICE AS TO COUNTS ONE, TWO THROUGH TWENTY-FOUR, AND FORTY-ONE THROUGH FORTY-NINE 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)-Criminal Forfeiture

1.    The allegations contained in Counts One, Two through Twenty Four, and Forty

One through Forty Nine of this Indictment are hereby re-alleged and incorporated by reference for

the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C)

and Title 28, United States Code, Section 2461(c).

2.    Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United

States Code, Section 2461(c), upon conviction of the offenses in violation of Title 18, United

States Code, Sections 666, 1341, 1343, 1349, 2314, and 1512, or a conspiracy to violate such

sections in violation of Title 18, United States Code, Section 371, the Defendants,

68

**JOE WINGO,**
**ANDY WINGO,**
**LINDA WINGO, and**
**HARRY MICHAELS**

shall forfeit to the United States of America any property, real or personal, which constitutes or is

derived from proceeds traceable to said violation(s). The property to be forfeited includes, but is

not limited to the following:

**MONEY JUDGMENT**

A.    A sum of money, the amount to be determined, in United States

currency, representing the total amount obtained from the offense(s) in

violation of Title 18, United States Code, Sections 371, 666, 1341, 1343, 1349,

2314, and 1512.

3.    If any of the property described above, as a result of any act or omission

of the defendant(s):

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without

difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section

2461(c).

## FORFEITURE NOTICE AS TO COUNTS TWENTY-FIVE THROUGH FORTY
### (18 U.S.C. § 982(a)(1) -Criminal Forfeiture)

1.      The allegations contained in Counts Twenty-Five through Forty of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

2.      Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1957, or a conspiracy to violate section Title 18, United States Code, Section 1956 the defendants,

**JOE WINGO,
ANDY WINGO,
LINDA WINGO, and
HARRY MICHAELS**

shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

### MONEY JUDGMENT

A.      A sum of money, the amount to be determined, in United States currency, representing the total amount obtained from the offense(s) in violation of Title 18, United States Code, Sections 1956 and 1957.

3.      If any of the property described above, as a result of any act or omission of the defendant(s):

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

70

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without

difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL.

S/_____
FOREPERSON OF THE GRAND JURY

Presented by:

MICHAEL J. MOORE
UNITED STATES ATTORNEY

Sharon T. Ratley
Assistant United States Attorney

Graham A. Thorpe
Assistant United States Attorney

Danial E. Bennett
Assistant United States Attorney

Filed in open court this 29 day of November, AD 2011.

_____
Deputy Clerk

71